**W. H. HODGES & COMPANY OF ALEXANDRIA, INC., Petitioner,**

v.

**The DONLEY COUNTY STATE BANK OF CLARENDON, Texas, Respondent.**

No. A–11366.

Supreme Court of Texas.

Oct. 5, 1966.

Rehearing Denied Nov. 9, 1966.

Smith, Teed, Wade, Waters & Snow, Pampa, for petitioner.

William J. Lowe, W. T. Link, Clarendon, for respondent.

GRIFFIN, Justice.

This suit was filed in the district court of Donley County, Texas, by The Donley County State Bank of Clarendon, Texas, as plaintiff (hereinafter called Bank), against Bob Sherrod, as a defendant, upon promissory notes and for foreclosure of a chattel mortgage lien upon 206 head of cattle. W. H. Hodges and W. H. Hodges & Company, a corporation, of Alexandria, Louisiana (hereinafter called Hodges), were joined as defendants, because it was alleged that Hodges was claiming to be the owner of said 206 head of cattle. Hodges filed a cross-action against Sherrod for debt and against the Bank and Sherrod for title and possession of the 206 head of cattle. By agreement of all parties the 206 head of cattle were sold and the proceeds of the sale, $23,564.29, were held subject to the outcome of the suit.

Hodges was the only party appealing from the trial court's judgment and on appeal the trial court's judgment was affirmed. 399 S.W.2d 193. In this Court Hodges alone complains of the judgment of the Court of Civil Appeals. The case was tried to a jury and four special issues were submitted. Issue No. One inquired if Sherrod owned the 206 head of cattle at the time he executed his chattel morgage on them to secure his loan to the Bank, or if Sherrod thereafter acquired title to them. The jury answered this issue "No." No complaint is made of this issue or its answer, so it will not be further considered.

Special Issue No. Two inquired if the conduct and actions of Hodges or its failure to act, with respect to the 206 head of cattle, reasonably led the Bank to believe, in the exercise of ordinary care, that Sherrod owned the 206 head of cattle. The jury answered this issue "No."

Special Issue No. Three inquired if Sherrod and Hodges were engaged in a partnership in dealing with the 206 head of cattle. The jury answered this issue "No." No complaint is made of the issue or its answer, so the question of partnership is no longer in the case.

Special Issue No. Four inquired if Sherrod and Hodges were engaged in a joint adventure in dealing with the 206 head of cattle. The jury answered this issue "Yes." Hodges has attacked this issue and its answer by appropriate assignments in both courts below and in this Court. Hodges contends there is no evidence to justify submission of this issue or the answer of the jury thereto.

In the trial court plaintiff Bank moved for judgment on the jury's answer to Special Issue No. Four (joint adventure), and the trial court granted this motion. On appeal the Court of Civil Appeals affirmed the trial court's action and also held Hodges was estopped to deny Sherrod's authority to mortgage the cattle, because Hodges had permitted Sherrod to place his brand on the 206 head of cattle.

We reverse the judgment of both courts below and remand the cause to the trial court for entry of judgment consistent with this opinion.

Sherrod wholly defaulted and refused to testify in this cause, invoking the fifth amendment to the United States Constitution and Art. I, Sec. 10 of the Texas Constitution, Vernon's Ann.St.

First we will dispose of the question of estoppel of Hodges to plead its ownership of the cattle and Sherrod's lack of authority to mortgage them to the Bank. The Bank's right under its plea of estoppel was submitted by the court as Special Issue No. Two. That issue read, as material to our inquiry: "Do you find * * * that the conduct and actions, if any, or the failure to act, if any, on the part of W. H. Hodges, with respect to the 206 head of mixed breed steer yearlings in question, reasonably

led The Donley County State Bank to believe, in the exercise of ordinary care, that the 206 head of mixed breed steer yearlings were owned by Bob Sherrod?" To which the jury answered "No."

Although Hodges made objections to the submission of this issue, the Bank has not attacked this finding by any cross-assignment of error. The Bank argued before the Court of Civil Appeals and argues in this Court that the facts show Hodges is estopped to deny Sherrod's right to mortgage the cattle. With the jury answering Special Issue No. Two against the Bank, the Bank, to prevail on the question of estoppel, must show that the facts in this record establish as a matter of law that Hodges is estopped to deny Sherrod's ownership of the cattle.

■ In view of the fact that the jury answered the estoppel issue favorably to Hodges and adversely to the Bank, in considering whether or not there is evidence to support the jury answer, we must view the evidence most favorably to Hodges. Unless the evidence was of such a character that as a matter of law Hodges was estopped to deny Sherrod's ownership of the cattle, we must uphold the jury's answer. Najera v. Great Atlantic & Pacific Tea Co., 146 Tex. 367, 207 S.W.2d 365, 367 (1948); Biggers v. Continental Bus Systems, Inc., 157 Tex. 351, 303 S.W.2d 359 (1957); 4 Tex.Jur.2d 326, § 804.

We have read the Statement of Facts and found there is evidence to support the jury's answer to Special Issue No. Two, and that finding is binding on us.

■ The president of the Bank testified that at the time the loan committee and the directors of the Bank approved the loan to Sherrod, they were relying on Sherrod's general statement that he had sufficient collateral to protect the Bank; that prior to making the loan the Bank sought information from ten or twelve people in the cattle business who knew Sherrod, and the Bank was satisfied that he had a good

credit and business reputation; that Sherrod usually had on hand a large number of cattle; that on December 13, 1962, when the Bank actually made the loan and took Sherrod's notes, there was no financial statement made by Sherrod to the Bank and Sherrod did not make a financial statement to the Bank until January 11, 1963; that the Bank made no inspection of the 206 head of cattle until about March 1, 1963. Mr. Hodges testified that only 114 head of cattle had been purchased by him and shipped to Sherrod by December 13, 1962; that he saw the 69 head of cattle branded with the Flying U brand on the left hip or thigh about December 10, 1962, but he did not know this was Sherrod's brand until about April 1, 1963. Hodges further testified that Sherrod owned no interest in the 206 head of cattle, and that he, Hodges, never authorized Sherrod to mortgage or otherwise encumber or dispose of the cattle. Hodges first found out that Sherrod had mortgaged the cattle to the Bank about April 1, 1963, and on receiving this information he and Sherrod went that same day to Clarendon to the office of the Bank and told the president that the cattle belonged to Hodges and that Sherrod neither owned the cattle nor had a right to mortgage them. There is other evidence of a similar nature, but the above recitation of evidence shows that the jury's answer to Special Issue No. Two has support. The jury's adverse answer to the Bank's plea of estoppel is supported by the evidence. This Court must dispose of the case on the basis that Hodges was neither estopped to claim ownership of the cattle nor to deny Sherrod's right to mortgage them to the Bank.

This leaves as the only ground for recovery the jury's answer to Special Issue No. Four, that Sherrod and Hodges were engaged in a joint adventure in dealing with the 206 head of cattle.

Hodges attacked this finding of the jury in both courts below and asked that the finding be disregarded because there was no evidence to raise such issue and no evi-

dence to support such finding by the jury in answer to such issue. Hodges raises these same points in this Court.

In reading the Statement of Facts, we find no evidence to support the jury's answer to the issue.

For there to be a joint adventure, there must be an agreement between Sherrod and Hodges, either express or implied. 33 Tex.Jur.2d 290, § 4 and authorities cited. There is no evidence in the record as to an express agreement between Sherrod and Hodges to enter into a joint adventure with regard to these 206 cattle.

Sherrod refused to testify to anything except his name and address. Mr. Hodges testified that about the last of October or the first of November, 1962 he had a telephone conversation with Sherrod in which Sherrod told him he had enough wheat pasture for about 250 yearlings, but did not have sufficient money to buy the cattle, and asked if he (Hodges) "would be interested in pasturing any." Hodges replied that he would consider this. About every week thereafter until near the end of November, 1962, Sherrod kept asking Hodges about the possibility of shipping cattle to Sherrod to be pastured on Sherrod's wheat. Hodges told Sherrod about the end of November that he would ship some cattle to be pastured on Sherrod's wheat, and began to ship these yearlings in various lots. By December 13th Hodges had shipped 114 head, and shipped a total of 220 head by Christmas, 1962. Hodges further testified there was no definite agreement as to how Sherrod was to be paid for pasturing the 220 head of cattle and for his services in looking after the cattle. On cross-examination Hodges answered the question, "In other words, you made a contract with a man to be compensated if the cattle made any money, but when he was to be paid and how he was to be paid and how much he was to be paid or what percentage, you had no agreement on that?" Answer, "Yes, sir."

Hodges further testified that Sherrod told him he had the wheat pasture and asked Hodges if he would stock it, and Hodges shipped the 220 head of cattle. Hodges said he expected Sherrod to be paid, if the cattle made any money, but there was never any discussion or agreement between him and Sherrod as to the amount of pay or when it was to be paid. He said: "Well, we had no agreement. In other words, I would say this, it was rather loose that we went into the thing. We did not have anything concrete, insofar as exactly how he should be paid." Hodges further testified with regard to Sherrod's compensation: "We never did say anything specifically, but I would imagine fifty per cent is what we assumed." Hodges said that he and Sherrod never discussed any arrangement for Sherrod to participate in the profits, but a fifty per cent division of profits was only what he, Hodges, had in mind; that had there been a loss, Hodges intended to take the loss and not ask Sherrod to share the loss; that he, Hodges, could have sold all or any part of the cattle at any time he saw fit, and that Sherrod never had any interest in any of the cattle.

"There must be a community of interest and participation in the profits of the enterprise to establish a joint adventure. That a person is to share in the profits of an enterprise does not of itself, however, create the relation of joint adventurers, with corresponding liabilities to third persons; the sharing must be by virtue of right as a principal in the joint business, not as mere compensation for services." 33 Tex.Jur.2d 287, § 2. Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704, 59 A.L.R.2d 1011 (1956).

At most, the record in this case would support a finding that Sherrod was to be paid for his wheat pasture and services in looking after the cattle by a share in the profits, if any, made on the cattle. It does not support a finding that Sherrod and Hodges were engaged in a joint adventure.

It follows from our holdings above that both courts below were in error in awarding title and possession of the cashier's check for $23,564.29 to The Donley County State Bank of Clarendon, Texas; that W. H. Hodges & Company, a corporation, is entitled to the title and possession of said cashier's check and that the judgments of Bank and of Hodges against Sherrod should have the resulting adjustments made by the trial court.

The judgments of both courts below are reversed and this cause is remanded to the trial court for entry of judgment in accordance with this opinion.

All costs are adjudged against Bob Sherrod and The Donley County State Bank of Clarendon, Texas, jointly and severally.