**Errol D. FRY, Appellant,**

v.

**Angus G. SHAW, Appellee.**

**No. 18275.**

Court of Civil Appeals of Texas, Dallas.

March 28, 1974.

Rehearing Denied April 25, 1974.

Jay M. Vogelson, Steinberg, Generes, Luerssen & Vogelson, Dallas, for appellant.

Gerald T. Waters, Carrollton, for appellee.

## CLAUDE WILLIAMS, Chief Justice.

Angus G. Shaw brought this action against Errol D. Fry seeking damages for breach of an alleged oral joint venture agreement. Shaw alleged that a group of persons formed themselves into a limited association to acquire stock, stock options and certain mineral interests from Glen Exploration, Inc., a mining corporation with property in Alaska, and that by virtue of certain prior business associations he had an opportunity to become a part of said group and to acquire an interest in the mining venture. However, he did not then have the necessary capital for such an investment so he entered into an oral agreement with Fry whereby Fry would make available the necessary capital to acquire the interest and would hold such interest in Fry's name but for the joint benefit of Shaw and Fry with each to receive one-half of any profits gained from the investment. It was alleged that Shaw and Fry jointly entered into the venture to acquire the interest and that through the efforts of Shaw, Fry did acquire in his own name, 19,200 shares of Glen Exploration, Inc. capital stock, with an option to purchase 38,000 shares of capital stock for $0.25 per share, and a mineral interest from operations of the corporation's mining properties in Alaska, which property was to be held in Fry's name for the benefit of Shaw to the extent of one-half of the profits received therefrom. Shaw alleged that Fry converted said shares to his own use and failed to pay Shaw one-half of the profits from said shares.

Fry denied that a joint venture agreement was made between the parties and alleged that any cause of action asserted was barred by various Texas statutes requiring that commissions, gifts and trusts to be evidenced by written agreements, which did not exist. He further alleged that Shaw was not licensed to sell securities and therefore could not recover a commission.

In answer to special issues submitted the jury found: (1) that Fry and Shaw agreed if Shaw would use his efforts to acquire the interest available, that Fry would furnish the capital to purchase same and they would share profits equally; (2) that Shaw used his efforts to acquire the interest available; (3) that the interest available was acquired by Fry as a result of Shaw's efforts; (4) that Fry and Shaw agreed that if Fry exercised the option to purchase 38,400 shares of stock Fry and Shaw would share the profits, if any, on said shares; and (5) that the highest value of the shares from April 15, 1969 until October 11, 1971 was a) 19,200 shares—$57,600 at $3.00 a share; b) 38,400 shares acquired by option—$86,400 at $2.25 a share; and c) 38,400 shares acquired by conversion of mineral interests—$86,400 at $2.25 a share.

Based upon this verdict the court rendered judgment in favor of Shaw and against Fry in the sum of $106,608. From this judgment Fry has perfected his appeal.

Although appellant presents seventeen points of error the three principal grounds for reversal of the trial court's judgment are (1) that appellee Shaw failed to establish the existence of a joint venture; (2) that there was no evidence to establish the amount of any "profits" derived from the shares involved and therefore, since there was no jury finding or finding by the

court as an omitted issue, there was no basis for awarding money damages; and (3) that the record affirmatively shows that Shaw acted merely as a "broker" and since he did not have a license to act as such broker, he is barred from recovery under the Texas Securities Act.

Appellee's cause of action was predicated solely on his contention of the existence of a joint venture agreement between him and Fry by virtue of which he was entitled to one-half of the profits derived from the investment. If no joint venture ever existed between Shaw and Fry then there could be no recovery of damages for lost profits. The following evidence was offered by Shaw on the question of the joint venture agreement.

Jack Fraser was a petroleum engineer and geologist and president of Glen Exploration, Inc. This company was engaged in mineral explorations in the state of Alaska. It proposed to sell certain securities. Shaw had been a long-time friend of one of Fraser's employees, William Goodson. Sometime prior to August 14, 1968 Shaw was present at a meeting with Fraser at which time Shaw expressed a desire to participate in the investment opportunity presented by Glen Explorations, Inc. Shaw said that he had the desire, but not the wherewithal to participate in this opportunity and told Fraser that he would like to get somebody else involved in it even though he, Shaw, did not have any money to invest. Fraser told Shaw that arrangements could be made to allow an investment if Shaw would bring someone in that Fraser approved. Shaw testified that he had had previous business dealings with Fry; that he got Fry interested in the Glen proposition and introduced Fry to Fraser. Fraser testified that at the meeting between Fraser, Shaw and Fry, held on August 14, 1968, there was never any discussion in his presence about Shaw participating in the investment deal. Fry did proceed to make an initial investment of $2,000 and subsequently exercised an option to obtain other shares of stock as well

as mineral interests in Glen Exploration, Inc. Shaw testified that Fry told him that he, Fry, would keep the investment in his name and that they would share the profits equally. The matter of exercising options and the subsequent acquisition of additional mineral interests in the exploration company was left to the option and discretion of Fry; Shaw left all of the decisions concerning the handling of the stock to Fry. He admitted that Fry had complete control over decisions concerning acquisition of stocks, exercise of options, etc. However, Shaw insisted that Fry had agreed with him on a number of occasions that if and when the stock was disposed of one-half of the profits would go to him.

Concerning any agreement as to the sharing of losses and expenses, Shaw testified that he did not remember any discussion about this phase of the venture. However, he testified positively in his deposition that he was not responsible for any losses because he "simply didn't have the money." He also said that there was very little if any discussion concerning sharing of losses. He testified:

Q. You never, at any time, said that you would be responsible for half of the losses, didn't you?

A. I was never asked whether I would be or not.

Q. Well, you didn't, did you?

A. No, I did not.

Q. And as the deal was structured, you were never responsible for any part of the losses, were you?

A. I presume that is correct.

Q. And Mr. Fry, at all times, had complete control over the stock that was issued to him in his name, his part of the venture, didn't he?

A. He did, but I had an implied interest in it—I mean, an implied policymaking aspect that I never was able to exercise, but I was in the awkward

position in that he was president of the company, so I couldn't very easily go up and say, "Now, look, I want this cleared up right now." I was in that position.

Q. You left all of those decisions up to Errol Fry as to the handling of the stock, whether to exercise an option, pay more money or not pay more, any kind of a decision like that?

A. That's correct.

He said that there was nothing said between him and Fry concerning Fry's right to dispose of whatever interest in the investment he might see fit and proper without consulting Shaw about such disposition. In this regard he testified:

Q. He could dispose of whatever interest he had independently of consulting with you or checking with you?

A. Well, there again, it is a hard thing to pass on. I mean, I would have thought that he would have consulted with me, yes, but he had the right under our agreement to handle it in any way he saw fit except to give it away without my knowledge.

.   .   .   .   .   .

Q. You never exercised any kind of control at all over this venture.
.   .   .

A. No.

The testimony is undisputed that Shaw's principal participation in this deal was to introduce Fry to Fraser. Thereafter, Fry negotiated his own personal investment with Fraser without Shaw's participation in the negotiations. On several occasions thereafter, Fry invested his own funds to purchase stock and mineral interests and did not consult with Shaw regarding the size of the several purchases. Fry controlled his own personal investment and made his own decisions as to the amounts which he invested. Finally, Fry gave the stock to the Park Cities YMCA.

A joint venture agreement is in the nature of a partnership which is engaged in the joint prosecution of a particular transaction for mutual profit. Holcombe v. Lorino, 124 Tex. 446, 79 S.W.2d 307 (1935). A joint venture is governed by the same rules as a partnership. Thompson v. Thompson, 500 S.W.2d 203 (Tex.Civ.App.—Dallas 1973, no writ). For a joint venture to exist there must be a community of interest both as to the profits and the losses, if any. Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716 (1945); Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704 (Tex.1956).

In Price v. Wrather, 443 S.W.2d 348 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.), Chief Justice Dixon, speaking for this court, pointed out that whether the given facts constitute a joint venture is a question of law to be determined by the court. He set forth the essential necessary elements of a joint venture as being: (1) a mutual right of control; (2) a community of interest; (3) an agreement to share profits as principals; and (4) an agreement to share losses, costs, or expenses. *See also* North Texas Lumber Co. v. Kaspar, 415 S.W.2d 470 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.); Kaiser Gypsum Co. v. Jordan, 399 S.W.2d 588 (Tex.Civ. App.—Waco 1966, writ ref'd n. r. e.) and Mummert v. Stekoll Drilling Co., 352 S. W.2d 526 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.).

Hodges & Co. v. Donley County State Bank, 407 S.W.2d 221 (Tex.1966), the supreme court denied a joint venture claim by one Sherrod who asserted that he was to be paid for feed, pasture and services in looking after some cattle by sharing one-half of the profits made on the sale of the cattle. The supreme court pointed out that the agreement completely lacked the essential element of sharing of losses. To the same effect, see Austin Bldg. Co. v. National Union Fire Ins. Co., 403 S.W.2d 499 (Tex.Civ.App.—Dallas 1966, writ ref'd n. r. e.).

■ The facts in this case completely negate the essential element of a joint venture agreement insofar as sharing of losses, costs and expenses are concerned.

Another essential element of a joint venture agreement, that of joint control, is also lacking in probative evidence. As demonstrated, the evidence is to the effect that Fry exercised all of the control concerning the acquisition of the interest and never at any time consulted Shaw as to the handling of such interest. As a matter of fact Shaw did not know the nature and extent of the interest acquired by Fry following the introduction of Fry to Fraser.

Therefore, we hold that the evidence in this case fails to establish the existence of a joint venture between Shaw and Fry. For this reason the trial court erred in overruling Fry's motion for judgment non obstante veredicto.

■ It is also apparent from this record that there is no basis for the award of damages. It must be remembered that appellee Shaw sued to recover lost profits. The jury was not called upon to determine the question of lost profits and the trial court made no independent finding concerning lost profits. There was no evidence offered concerning lost profits. The finding of the jury in response to special issue number five concerning the highest sales price for the stock between certain dates is entirely irrelevant to the cause of action asserted by appellee Shaw. Such finding can therefore not support a judgment under the pleadings of this case. A finding of the gross sales value of stock during a period of time is not the equivalent of a finding as to the amount of profit that might result from the sale of stock during the same period of time. The factors to be considered in determining lost profits are different from those to be considered in determining gross stock values on a particular date. In order to determine profit, if any, the jury would have to consider not only the stock quotations but would have to consider the price paid for the shares, other expenses involved in connection with the investment, as well as the availability of purchasers for all or any part of the shares.

■ Shaw's pleadings assert a cause of action for conversion of the stock based on a proprietary one-half interest as a result of an alleged joint venture. Since we have held that no joint venture relationship existed between Shaw and Fry it necessarily follows that Shaw cannot legally assert a proprietary interest in the securities purchased by Fry. Consequently, Shaw has no cause of action for conversion.

■ Finally, we agree with appellant Fry that the record in this case reveals that Shaw's role in the transaction was that of a broker, dealer or commission agent and since he was not licensed as a broker, dealer or agent, as required by the Texas Securities Act, he cannot recover a commission for his services. Article 581–34 of the Texas Securities Act, Vernon's Ann.Civ.St. plainly and expressly provides that no person shall bring or maintain any action in the courts of this state for collection of a commission or compensation for services rendered in the sale or purchase of securities without alleging and proving that such person was duly licensed under the provisions of the law. Under the record as here presented Shaw's only cause of action would be for his compensation for services rendered by him in arranging the meeting between Fry and Fraser which resulted in the purchase of the securities by Fry. Pursuant to the plain letter of the statute Shaw cannot recover a commission or compensation since he admittedly was not licensed.

Our resolution of the questions here presented render it unnecessary that we pass upon or consider the remaining points presented by appellant. The trial court erred in rendering judgment for appellee Shaw and such judgment is here reversed and now rendered that appellee Shaw do have and recover nothing of and from appellant Fry.

Reversed and rendered.