Richard E. PATTON et al., Appellants,

v.

James E. CALLAWAY et al., Appellees.

No. 6409.

Court of Civil Appeals of Texas, El Paso.

April 2, 1975.

Rehearing Denied April 30, 1975.

Stubbeman, McRae, Sealy, Laughlin & Browder, W. B. Browder, Jr., Rodney W. Satterwhite, Midland, for appellants.

Turpin, Smith & Dyer, Irby L. Dyer, Midland, Lawrence L. Fuller, Monahans, for appellees.

## OPINION

PRESLAR, Chief Justice.

Appellants, Richard E. Patton, Ted Collins, Jr. and Herbert E. Ware, Jr., sued Appellees, James E. Callaway, William O. Callaway and Texana Oil Company, seeking to recover upon an oral agreement and to impose a constructive trust on certain property under allegations that plaintiffs and defendants were engaged in a joint venture. At the conclusion of all the evidence the Court instructed a verdict for the defendants. We affirm.

Throughout this opinion the parties will be referred to by name or as plaintiff or defendant. In summary, the facts are that plaintiffs learned that an oil and gas lease on Section 18 was held by one E. B. White and Harry Miller and that it was for sale. Plaintiffs also knew that the defendants had previously sold a lease on an adjoining section to the Miami Oil Company, so they contacted the defendants to see if they would be interested in Section 18. After some preliminary negotiations, plaintiffs and defendants orally agreed that the defendants would buy the leases from Miller and White, taking them in Texana's name, and defendants would resell the leases and the parties would share the profits and share in any overriding royalty interests which might be retained on the resale. The defendants bought the leases, and when their expiration date came and no sale had been made, defendants made an additional payment to get an extension and renewal of the leases. The defendants were never able to negotiate a sale, to Miami or anyone else, so Texana Oil itself drilled a well on the leases after making an agreement with El Paso Natural Gas Company for a loan in the amount of the cost of drilling the well in return for a 50% overriding royalty interest. The oral agreement of the parties did not contemplate the drilling of a well on the leases by Texana itself, and that was a development which arose after they were unable to make a sale. As indicated, the plaintiffs' theory of recovery is to establish that defendants are constructive trustees holding property in trust for plaintiffs, that plaintiffs and defendants were engaged in a joint venture to acquire the leases and sell them and split the profits, and that plaintiffs and defendants were partners and

plaintiffs should have an accounting of partnership profits.

The defendants specially pled the Statute of Frauds, Art. 3995a, Vernon's Tex.Rev.Civ.Stat.Ann., now Section 26.01, Tex.Bus. & Comm.Code Ann., V.T.C.A., and the Texas Trust Act, Art. 7425b–7, Tex.Rev.Civ.Stat.Ann. Plaintiffs seek to avoid these statutes and to bring themselves within the equitable considerations of the constructive trust. By their first two points of error, they say that the trial Court erred in sustaining defendants' motion for instructed verdict because there was a confidential relationship between plaintiffs and defendants, and that such relationship existed before and apart from the agreement made the basis of their suit. For a constructive trust to arise there must be a fiduciary relationship before and apart from the agreement made the basis of the suit. Consolidated Gas & Equipment Company of America v. Thompson, 405 S.W.2d 333 (Tex.1966); Tyra v. Woodson, 495 S.W.2d 211 (Tex.1973). Plaintiffs presented evidence to show a fiduciary relationship prior to the instant suit. This being a directed verdict case, we must view the evidence in the light most favorable to the losing party, the plaintiffs in this case, and we must disregard all conflicts and indulge in every intendment reasonably deductible from the evidence in favor of the plaintiffs. Viewing the evidence in that light, we are of the opinion that under the standards of the above cases plaintiffs fail as a matter of law to show a prior fiduciary relationship. Plaintiffs show two prior business transactions between one or more of their number with one of the defendants. They testified that in each instance they trusted the defendant they were dealing with. But plaintiffs' own testimony is that they were arms-length transactions in which they were the seller and the defendant was the buyer and that each party was trying to get the best deal he could for himself. The transactions were in writing so that there was no showing of trusting or the building of a confidential relationship. And the testimony that the plaintiffs "trusted the defendant" does not aid their position in view of the Supreme Court's statement in Thigpen v. Locke, 363 S.W.2d 247 (Tex.1962):

"* * * but mere subjective trust alone is not enough to transform arms-length dealing into a fiduciary relationship so as to avoid the statute of frauds. * * *"

In dealing with the conflict which arises as courts attempt to accommodate the legal expressions of the Statute of Frauds with the equitable considerations of the constructive trust, our Supreme Court has taken what may be termed a hard line, as compared to its earlier cases, such as FitzGerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951); Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557 (1962); and Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401 (1960). Tyra v. Woodson, supra, was before this Court and the facts were much stronger than they are in the case now before us, but the Supreme Court said that Tyra was controlled by Consolidated Gas & Equipment Company of America v. Thompson—that the fiduciary relationship must be existent before and apart from the agreement made the basis of the suit. In the recent case of Meadows v. Bierschwale, 516 S.W.2d 125 (Tex.1974), the Supreme Court quoted from its opinion in Consolidated Gas & Equipment Company of America v. Thompson, and reaffirmed the rule:

"'Our holdings above cited are to the effect that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. Such is our holding here. As stated, the fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create a constructive

trust. To hold otherwise would render the Statute of Frauds meaningless.' "

The Court then went on to say:

" * * * This court has imposed stringent prerequisites to the enforcement of oral agreements like the one in *Thompson* to avoid abrogating the Statute of Frauds and the Texas Trust Act. * * * "

As authority for that statement, the Court cited Tyra v. Woodson, supra. In the case before us, plaintiffs' evidence as to a prior fiduciary relationship is insufficient to raise a fact question.

Plaintiffs also seek to recover under allegations that their oral agreement created a partnership or joint adventure which entitles them to an accounting of profits. Four elements are necessary to constitute a joint adventure. They are: (1) a mutual right of control, (2) a community of interests, (3) the sharing of profit as principals, and (4) the sharing of losses, costs or expenses. Price v. Wrather, 443 S.W.2d 348 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.). These elements are not satisfied by the evidence for plaintiffs' own testimony was that they had done all they were supposed to do when they brought the defendants and the sellers of the lease together, and that they were to bear no expenses or costs, and the resale of the leases was entirely under the control of the defendants. In Tyra v. Woodson, this Court found on facts much stronger than those presented here that the parties were engaged in a joint adventure, and as such joint adventurers they were in a confidential relationship. We held that their case was not controlled by the Consolidated Gas case, since that case recognized that joint ventures are one of the usual cases of fiduciary relationship. In that case, the trial Court had instructed a verdict, as in the case before us, and the Supreme Court reversed this Court and upheld the trial Court. Under the holding of Tyra v. Woodson, we uphold the trial Court in the case before us.

We find no merit in the plaintiffs-appellants' fourth point of error that theirs was an agreement to share the profits from the sale of real estate, and that such an agreement is enforceable and not within the Statute of Frauds. The simple fact is that the contract was for sharing of the profits of a sale and there has never been a sale. The testimony of the parties is completely in agreement that the extent of their oral contract was the sharing of proceeds of a sale, and there was no understanding as to what would happen in the event Texana drilled the lease itself. When defendants could not effect a sale and did decide to drill, they offered the plaintiffs an opportunity to share with them in the drilling of a well, and the plaintiffs declined. There is testimony by one of the plaintiffs that Jim Callaway, defendant, explained to them that since there was no profit from a sale there wasn't going to be anything to split and that they were going to give them an override of 1.25%. This brings us to the fifth and sixth points of error asserted by plaintiffs as the exclusion from evidence by the trial Court of a letter from defendants to plaintiffs tendering the 1.25% override. Plaintiffs say that this was a written memorandum of the contract between the parties. But they concede the law to be that generally such memorandum must contain all the essential elements and that such essential elements of the contract may not be supplied by parol. The letter does not meet that test, and was not admissible as the memorandum of the agreement of the parties. The trial Court could well have determined that the letter was an offer of compromise for it was dated four days after suit was commenced. We are not authorized to overrule such a finding of compromise in the absence of a showing that the trial Court abused its discretion in the matter. Southerland v. Porter, 336 S.W.2d 841 (Tex.Civ.App.—Amarillo 1960, writ ref'd n. r. e.). We find no abuse of discretion.

By a supplemental petition filed the day before submission, plaintiffs assert a seventh point of error that there was pleading and proof of actual fraud committed by defendants which justifies the imposition of a constructive trust. Over the objection of the defendants we have permitted the filing of this late point of error and over the objection of the defendants we will consider it. However, upon examination of the point of error, we find it to be without merit. The fraud alleged is that on April 12th defendants represented to the plaintiffs that Section 18 had been turned or sold to Miami Oil producers. It was further alleged that such representation was not true and was made to induce the plaintiffs to enter into the agreement with defendants to share equally in the profits. It clearly appears from the evidence that the statement was one of an opinion, but, be that as it may, at the time the statement was made it was also discussed by the parties that no terms had been agreed upon and the parties were in agreement that they should wait until the well which Miami was drilling on the adjoining section was nearly completed and they could then make a better deal with Miami. Thus the evidence is clear that the plaintiffs knew that there had not been a binding sale made with Miami. Also, if we were to assume that it was a fraudulent representation and that it was relied upon, it still was not the inducement to enter into the contract because the deal had long since been made between the parties and the only change made on April 12th was from a 40–60 division to a 50–50 division of any profits that might be made. Since we have held that the contract was unenforceable this induced change of a fraction is of no consequence.

We have considered all points of error and all are overruled. The judgment of the trial Court is affirmed.

OSBORN, J., not sitting.