**G. HASSLOCHER a/k/a Jim Hasslocher & Veva Hasslocher, Appellants,**

v.

**Frank HEGER and Marilyn Heger, Appellees.**

No. 04–82–00004–CV.

Court of Appeals of Texas, San Antonio.

March 7, 1984.

On Motions for Rehearing April 11, 1984.

Frank Burney and Joyce W. Moore, Martin & Drought, San Antonio, for appellants.

Michael W. Bahan, Ralph Brown, Harvey L. Hardy, San Antonio, for appellees.

Before BUTTS, TIJERINA and DIAL, JJ.

BUTTS, Justice.

Frank and Marilyn Heger (plaintiff) sued G. "Jim" and Veva Hasslocher (defendant) for breach of contract, specific performance, and attorney's fees pursuant to TEX. REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1982–1983). Alternatively plaintiff sued for a declaratory judgment finding a joint venture. Known as the North Star diamond, the subject of the suit is a "blue" diamond of about 32.40 carats. Suit was tried to a jury solely on the joint venture theory, and the jury returned its verdict in favor of plaintiff. Defendant brings sixteen points of error. We sustain that portion of point of error seven ascribing insufficient evidence to support the jury finding of joint venture. We reverse and remand.

In February of 1977 Heger, a jeweler in San Antonio, apprised Hasslocher that the North Star Diamond could be purchased for a bargain price of $300,000.00. Hasslocher agreed to buy the stone and split the profits from the sale with Heger on a fifty-fifty basis. The two men traveled to Florida, and Hasslocher purchased the notable diamond for $300,000.00. About one month later Heger proffered a written agreement to Hasslocher concerning the diamond. Hasslocher refused to sign that one; instead he wrote another one. It is that handwritten agreement which is made the basis of the joint venture claim (and breach of contract claim) in this case.

In addition to finding there was a joint venture, the jury also found the defendant repudiated the agreement on four specific dates; that the diamond had a fair market value on March 6, 1978, the earliest date of repudiation, of $750,000.00; and that plaintiff had reasonable expenses in the sum of $5,622.13. But the jury failed to find plaintiff owned 50 percent of the diamond; the defendant was determined to be the owner. Further, the jury failed to find the plaintiff represented to defendant on March 23, 1977, that the diamond was worth over $1.5 million dollars or that plaintiff had the con-

tacts and experience to sell the diamond personally at the highest possible price or that a fifty percent split of the profits was the standard commission for plaintiff's services in selling the stone.

Both parties signed the agreement which states that Hasslocher purchased the stone for $300,000.00; that both would share "fifty-fifty" in the profits from the sale; that Heger would show the diamond to prospective customers, keeping the diamond in a safety deposit box; that it would be renamed the F. Heger Blue; that no liens or encumbrances would be placed on it; that the stone could be recut to a smaller size; that it was "to be sold for the highest price possible in order to gain the greatest profit."

Defendant first argues certain requested special issues should have been submitted to assure placing before the jury all the controlling issues. In this connection defendant says the issue of joint venture as submitted failed to require the jury to find that all of the four essential elements of joint venture were present. Further, defendant submits, the fourth element of joint venture was erroneously framed in the disjunctive, making it impossible to determine whether the jury found there was an agreement for the parties to share losses. This is the issue submitted:

SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that on or prior to March 23, 1977, Plaintiff, Frank Heger, and Defendants, G. Hasslocher and Veva Hasslocher, entered into a joint venture agreement concerning the North Star Diamond?

"Joint venture" means a special combination of two or more persons in the nature of a partnership engaged in the joint prosecution of a particular transaction for their mutual benefit or profit. The elements of a joint venture are: (1) mutual right of control, (2) community of interest, (3) agreement to share profits as principals, and (4) agreement to share losses, costs or expenses.

You are further instructed that in order to create a binding agreement, the minds of the parties must meet with respect to both the subject matter of the agreement and all of its essential terms. The undisclosed intentions or understandings of one party will not bind the other party unless the other party also attaches the same meanings to the words.

We, the Jury, answer: ___We do___

The only difference in defendant's requested special issue on joint venture from the one submitted goes to the fourth element. It reads: "... agreement to share losses *and* costs or expenses. The joint venture does not exist if any one of these elements is missing."

We note the issue as submitted has been so defined in other cases. *Gray v. West,* 608 S.W.2d 771, 777 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.); *Heinrich v. Wharton County Livestock, Inc.,* 557 S.W.2d 830, 833 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Patton v. Callaway,* 522 S.W.2d 252, 256 (Tex.Civ. App.—El Paso 1975, writ ref'd n.r.e.); *Fry v. Shaw,* 508 S.W.2d 142, 145 (Tex.Civ.App. —Dallas 1974, writ ref'd n.r.e.). In *Coastal Plains Development Corp. v. Micrea, Inc.,* 572 S.W.2d 285, 287 (Tex.1978) the Supreme Court denotes this element as "an agreement to share losses," not mentioning "costs or expenses." While it is common knowledge that some joint ventures do not realize losses but do experience costs or expenses, it is equally well known that some joint ventures experience losses as well as costs or expenses. To illustrate this, the jury in this very case sent a note to the trial court during their deliberations to inquire whether they were required to find all of the three (losses, costs, expenses) existed. The court directed their attention to the jury charge.

▇▇▇ While it may be a disjunctive presentation (here losses, costs, or expenses) has often been construed in Texas to mean "and" (a conjunctive presentation), as plaintiff argues with many authorities noted, we believe, in light of the specifically worded requested issue in this case, the use of the

word "and" after "losses" might have been of some aid to the jury. The jury in this case demonstrated their uncertainty in the matter. The law is clear there must be a finding that the parties agreed to share losses. *Id.* However, under the circumstances in this case, we cannot say the jury did not make the finding that the parties agreed to share losses. We accordingly overrule the contentions in point of error two. We further find that the trial court properly submitted the broad issue of joint venture and properly did not submit a series of narrow issues as requested by defendant.[1] TEX.R.CIV.P. 279. Point of error one is overruled.

■ In points of error seven and eleven defendant challenges proof of the elements of joint venture. We sustain point of error seven as to sufficiency of proof of agreement to share losses, mutual right of control, and community of interest. In reviewing factual insufficiency points, this court will consider all of the evidence in the record that is relevant to the fact being challenged. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Defendant has also raised legal insufficiency (no evidence) challenges to these same matters. In that regard we will review the evidence as dictated by the standards enunciated in *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401–401 (Tex.1981) and *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965).

■ The written agreement contains no provision that the parties will share losses, as they must. *Coastal Plains Development Corp. v. Micrea, Inc., supra* at 287. Both parties testified they expected certain expenses to be incurred, and these would be reimbursed from the profits from the sale. The jury found the defendant owned the diamond, thereby eliminating any ex-

emplary damages arising from alleged conversion. The following testimony of the defendant was elicited:

Q: What was your agreement with Frank about losses on this deal? What if the stone had been stolen or what if the stone had turned around to be a dud and was only worth a hundred thousand, who was going to have to pay the loss on that?

A: Me.

Q: Did you and Frank ever discuss him paying part of the loss?

A: No, he didn't own it and I didn't expect him to.

Q: Well, did he ever volunteer?

A: Oh, no.

Q: Well, why, if you were willing to give him fifty percent of the profits, did you not expect him to run the risk of some of this loss?

A: Well, it was mine and if it was a loss, it was just a bad deal for me, I guess.

     \*     \*     \*     \*     \*     \*

Whether or not the relationship of joint venture is created ordinarily depends upon the intention of the parties. *Luling Oil & Gas Co. v. Humble Oil & Refining Co.,* 144 Tex. 475, 191 S.W.2d 716, 722 (1946). The agreement here (called memorandum of understanding relative to the blue diamond) did not authorize either party to create any liability to third parties which would be binding on the other. "The [joint venture] relationship being in the nature of a partnership, losses must be shared as well as profits." *Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704, 709 (1956).

The agreement stated that defendant would furnish the money to purchase the diamond and the parties would share fifty-

---

1. These requested issues inquired whether plaintiff was entitled to receive fifty percent of the net profits from any sale of the diamond; whether the defendant agreed that plaintiff owned fifty percent of the diamond; whether defendants agreed the diamond would be sold within a reasonable time; whether there was an agreement the diamond would be sold at an auction; whether the defendant breached the agreement by refusal to sell after a reasonable time has passed and there had been opportunities to sell to a qualified buyer; whether plaintiff breached the agreement by failing to produce a qualified buyer at a price and time acceptable to defendant.

fifty in the profits made from the sale of the diamond. The agreement specified that Heger would keep the diamond in a safety deposit box at either of two specified banks "while the diamond is in his possession." Further neither party would place any liens against it nor allow another to place liens against it. Heger was to show the diamond to prospective customers. The agreement contained no time limit as to the length of the arrangement between the parties nor any date of termination.

The evidence shows that the diamond had not been sold in March 1978, and defendant took possession from plaintiff and retained the diamond. The stone had not been sold at the time of the trial.

While we do not sustain defendant's point of error two as to the charge to the jury defining joint venture, we do sustain point of error seven that there is insufficient evidence to support a finding of an agreement to share losses.

We also agree with defendant that insufficient evidence of "community of interest" was shown. This means, in a joint venture, a commonly shared incentive between the parties as to the progress and goals of the joint venturers. *W.H. Hodges & Co. of Alexandria, Inc. v. Donley County State Bank*, 407 S.W.2d 221, 224 (Tex.1966). In *Brown v. Cole, supra* at 716 this definition is quoted:

> ... The parties may have a common objective or purpose, and still a community of interest may be lacking. For instance, two parties may be engaged in the performance of a purpose or object, which may be for the sole interest or advantage of one, and from which the other is to derive no benefit whatever, or the interest of the one may be different and distinct from that of the other; in either of such cases there would not be a joint adventure. The term 'community of interest' as applied to the relation of joint adventure, means an interest common to both parties, that is, a mixture or identity of interest in a venture in which each and all are reciprocally concerned and from which each and all derive a material benefit and sustain a mutual responsibility.

While both parties desired profits, the plaintiff also stated his objective was to gain prominence as a jeweler. "I was wanting to further my esteem or prestige in the community and I really had a goal of making investments available to people who wanted to invest in diamonds. ... I would be able to establish myself in the community as a reliable source, a gem investor."

After the plaintiff showed the diamond during the first year when it was not to be sold, the defendant removed the stone from the safety deposit box to another one to which only he had access. We hold there is some evidence of community of interest but that evidence falls short of sufficient evidence to support the finding.

The evidence most clear in the insufficiency of proof of another element of joint venture is that of "mutual right of control." The written agreement provides that plaintiff have possession of the stone "to show the ring to prospective customers." The evidence demonstrates the defendant controlled many events affecting the diamond. Upon bringing the diamond to San Antonio the defendant kept it in his personal safe. Then he moved it to a safety deposit box secured at a bank in his name, with himself, his wife, and plaintiff on the signature card authorizing each to open the box. On March 6, 1978, the defendant moved the diamond to another safety deposit box. After that time, the plaintiff had to be accompanied by the defendant or his wife to see or show the diamond. Plaintiff testified the defendant had control over his access to the box, but that "it worked out in the long run." He stated it was a little more trouble to show the stone to people under those circumstances.

The defendant stated he removed the diamond to make sure it was secured. "... I would control who saw the diamond and who could play with it, touch it and so on." He told the plaintiff he was not going to have the stone shown to unqualified

buyers in the future. If the plaintiff had a qualified buyer, then the defendant or his wife would open the box.

In addition, the defendant told the plaintiff the diamond could not be sold for a period of a year because of a capital gains provision in the tax law. The plaintiff acknowledged defendant's purpose in the delay and acquiesced in it. We find there is insufficient evidence of "mutual right of control."

While there is some evidence to support the facts challenged, that evidence is insufficient. We hold there is insufficient evidence of three of the elements of joint venture; thus the jury finding of joint venture in this case rests upon factually insufficient evidence. Because of our disposition of this point of error, the necessity to address other arguments directed to trial and post-trial matters no longer exists.

The judgment is REVERSED and the cause REMANDED for trial.

### ON MOTIONS FOR REHEARING

On motion for rehearing appellants (Hasslocher) request severance and affirmance of a portion of the trial court's judgment. We grant that request. The jury failed to find Heger had an ownership interest in the diamond; the judgment reflects Hasslocher owns the diamond. No appeal was taken from that portion of the judgment, and that matter of fact need not be ascertained on retrial. TEX.R.CIV.P. 434. Appellees (Heger) concede Hasslocher is entitled to an affirmance of that part of the judgment.

Accordingly, that portion of the trial court's judgment reflecting ownership interest to be in Hasslocher is affirmed, severed from the case, and judgment as to that portion is rendered. In all other respects Hasslocher's motion for rehearing is denied. The motion for rehearing of Heger is denied.

TIJERINA, Justice, dissenting.

Having reconsidered my ruling on the question of the sufficiency of the evidence to support the jury's finding that a joint venture was contemplated by the parties, I would grant appellees' motion for rehearing. I now would conclude that the jury's affirmative answer to special issue number one was based on more than sufficient probative evidence.

### SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that on or prior to March 23, 1977, Plaintiff, Frank Heger, and Defendants, G. Hasslocher and Veva Hasslocher, entered into a joint venture agreement concerning the North Star Diamond?

"Joint venture" means a special combination of two or more persons in the nature of a partnership engaged in the joint prosecution of a particular transaction for their mutual benefit or profit. The elements of a joint venture are: (1) mutual right of control, (2) community of interest, (3) agreement to share profits as principals, and (4) agreement to share losses, costs or expenses.

You are further instructed that in order to create a binding agreement, the minds of the parties must meet with respect to both the subject matter of the agreement and all of its essential terms. The undisclosed intentions or understandings of one party will not bind the other unless the other party also attaches the same meanings to the words.

We, the Jury, answer: We do

"The jury is thus not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded ... if the record discloses any evidence of probative value" in support thereof. *Lynch v. Ricketts,* 158 Tex. 487, 314 S.W.2d 273, 276 (1958). In the instant case the joint control and community interest, the first two elements of a joint venture, are established by the memorandum of agreement drafted by appellant. Both parties performed under the agreement and the fact that appellant later moved the diamond to another safety deposit box would be irrelevant since the diamond was still accessible to appellee. The agreement

to share profits as principals was undisputed. With reference to the fourth element, the agreement to share losses, costs or expenses, the evidence was conflicting. The jury resolved the conflict by disregarding appellant's testimony that there was no agreement to share losses. Appellant testified he expected to be reimbursed by appellee for the interest payments on the loan. Appellee testified he felt obligated to share the losses. *See Royal v. Cameron*, 382 S.W.2d 335 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.). Concerning the jury's inquiry (whether they were required to find that all three, losses, costs and expenses existed) we can only assume that the jury, based on the direct and circumstantial evidence, impliedly found the agreement to share losses. *See Harrison v. Harrison*, 597 S.W.2d 477 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.).

Texas cases usually require the following test for determining whether a joint venture exists: (1) a community interest in the undertaking, (2) a right to share in the profits and an obligation to share in the losses, and (3) a mutual right to control the enterprise. 19 R. HAMILTON, BUSINESS ORGANIZATIONS § 4 (Tex.Practice 1973). The Supreme Court in *W.H. Hodges & Co. of Alexandria, Inc. v. Donley County State Bank*, 407 S.W.2d 221, 224 (Tex. 1966), additionally required, for the determination of a joint venture, that there be an *agreement either express or implied.* Under the written agreement in this record, appellee, prior to the repudiation of the agreement by appellant, did have control and possession of the diamond and was held responsible for its value while under his possession. It was the jury's exclusive prerogative, as the trier of fact, to judge the credibility of the witnesses and the weight to be given their testimony, to resolve conflicts in the testimony of witnesses, or to believe part of a witness's testimony or disregard it. *Royal v. Cameron, supra.* An appellate court cannot substitute its judgment for that of the trier of fact. *Szmalec v. Madro*, 650 S.W.2d 514, 517 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Thus, having reviewed the entire record, I conclude that the jury's answer to special issue number one is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. I withdraw my ruling and substitute this opinion to affirm the judgment of the trial court.