**Opinion issued March 13, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00287-CV

————————————

## VAROSA ENERGY, LTD., Appellant

## V.

## DAVID R. TRIPPLEHORN, II, ASPEN DEVELOPMENT COMPANY, LLC, AND 1801 CORPORATION, Appellees

———

### On Appeal from the 133rd District Court
### Harris County, Texas
### Trial Court Case No. 2006-62660

———

## MEMORANDUM OPINION

Varosa Energy, Ltd., the plaintiff in the trial court, appeals from a judgment

awarding Varosa $892,000 for breach of contract by Jake Rollings d/b/a Jake's

Equipment and Repair. Varosa's complaint on appeal is that the judgment did not

declare other parties—appellees David R. Tripplehorn, II and Aspen Development Company, LLC—jointly and severally liable.[1]

A jury found that Tripplehorn, on behalf of Aspen, and Rollings entered into a joint venture, but the trial court disregarded that finding. In three points of error, Varosa contends that the trial court erred in disregarding the jury's joint venture finding and in refusing to hold Tripplehorn and Aspen jointly and severally liable. We affirm.

## Background

In March 2006, Varosa contacted Rollings, who refurbishes drilling equipment, about purchasing a used Cabot Model 750 drilling rig. Rollings knew of a used rig that was being sold by Gordon Brothers Supply, Inc. for $396,250, and Varosa and Rollings agreed that Rollings would refurbish and sell the rig to Varosa for $1.3 million, with payments to be due in installments. Varosa also agreed to pay Rollings $484,000 for two refurbished mud pumps, in two payments of $242,000 each. Between March and June 2006, Varosa paid Rollings $600,000 toward the purchase price of the rig. Varosa also paid Rollings the first of the two $242,000 payments for the two mud pumps. Varosa and Rollings had no written contract reflecting the terms of these transactions at the time.

---

[1]    A brief was filed on behalf of three appellees—David R. Tripplehorn, II, Aspen Development Company, LLC, and 1801 Corporation—but Varosa requests reversal and rendition only as to Tripplehorn and Aspen.

2

Meanwhile, and unbeknownst to Varosa, Rollings contacted Tripplehorn about investing in the purchase, refurbishment, and sale of the rig. Rollings and Tripplehorn had agreed to similar investment deals in the past, and their usual agreement was that Tripplehorn would pay for and hold title to the equipment, while Rollings would refurbish it, find a buyer, and then have Tripplehorn convey title to the buyer upon receipt of payment for the refurbished equipment. After coming to the oral agreement with Varosa described above, Rollings informed Tripplehorn in May 2006 that he needed to buy a Cabot 750 rig, Tripplehorn agreed to invest in the rig, and Rollings and Tripplehorn each paid Gordon Brothers half of the purchase price. Rollings and Tripplehorn agreed that the bill of sale would be made out to Aspen, Tripplehorn's wholly-owned corporation, so that Tripplehorn would hold title to the rig. Rollings would refurbish and sell the rig, and Tripplehorn would convey title to the new owner upon receipt of payment from the buyer. Rollings and Tripplehorn agreed to split the profits or losses equally. Rollings did not inform Tripplehorn that Rollings had already agreed to sell the refurbished rig to Varosa for $1.3 million, or that Rollings had already received a $600,000 payment toward the purchase price.

In September 2006, by which time Rollings had made little progress refurbishing the rig, Varosa and Rollings entered into a written "Agreement and Amendment of Purchase and Sale Contract." In it, Rollings acknowledged that

3

Varosa had paid Rollings $600,000 toward the purchase price of the rig and $242,000 toward the purchase price of the two mud pumps, and Rollings agreed to complete the refurbishment of the rig and the mud pumps within 60 days. The agreement also provided for three installment payments of $100,000 each to be paid to Rollings every two weeks if he achieved certain milestones on the project, as set forth in an exhibit to the agreement. A third party was to inspect Rollings's progress every two weeks and confirm that Rollings had achieved the milestones contemplated by the agreement. Simultaneously with the execution of this agreement, Varosa agreed to pay Rollings another $50,000 toward the purchase price of the rig. This agreement was signed by Oscar Vargas on behalf of Varosa and Jake Rollings on behalf of Jake Rollings d/b/a Jake's Equipment and Repair. Importantly, the contract made no mention of Tripplehorn, Aspen, or 1801 Corporation, nor did it disclose the existence of any joint venture between Rollings and any other party. But it did include a warranty and representation by Jake's Equipment that "Jake Rollings and Jake's Equipment and Repair hold the Rig and the Mud Pumps for the benefit of Varosa," and that "Varosa shall have a security interest in and to the Rig, Mud Pumps and all attachments that originally came with the Rig and Mud Pumps to secure the amount paid herein to date toward the Rig and Mud Pumps."

The third-party inspector concluded that Rollings had not completed the work required for any of the two week periods in the 60 days following the execution of the agreement. Accordingly, Varosa did not pay Rollings any of the $100,000 installment payments referenced in the agreement. At the end of September 2006, Varosa sued Rollings for breach of contract, fraud, foreclosure of security interest, and unjust enrichment.

In October 2006, Tripplehorn discovered that Rollings had an agreement to sell the refurbished rig to Varosa. Shortly thereafter, in November 2006, Tripplehorn transferred title to the rig from Aspen to 1801 Corporation, a corporation wholly-owned by Tripplehorn. Aspen and 1801 Corporation then filed a UCC Financing Statement for the rig. In February 2007, Aspen and 1801 Corporation intervened in the lawsuit between Varosa and Rollings, asserting that 1801 Corporation was the owner of the rig. Aspen and 1801 Corporation filed cross-claims against Rollings for fraud, negligent misrepresentation, and breach of contract, and Varosa amended its petition to assert claims against Tripplehorn, Aspen, and 1801 Corporation. Specifically, Varosa alleged that Tripplehorn and Rollings entered into a joint venture to purchase, refurbish, and sell the rig and, therefore, Tripplehorn was jointly and severally liable for Rollings's breach of the contract with Varosa. Varosa also asserted claims for fraudulent transfer and tortious interference against Tripplehorn, Aspen, and 1801 Corporation.

5

The case was tried in October and November 2009. The jury found that both Varosa and Rollings breached the agreement, but that Varosa breached first. However, the jury awarded no damages to Rollings and instead awarded Varosa $892,000. The jury also found that "David Tripplehorn, on behalf of Aspen Development, LLC, entered into a joint venture with Jake Rollings authorizing Jake Rollings to purchase and re-sell the used Franks Cabot 750 Drilling Rig." The jury found no fraud, fraudulent transfer, or negligent misrepresentation on the part of any party.

Varosa moved to disregard the jury's findings that it breached the contract and was first to breach. It also requested entry of a judgment holding Tripplehorn and Aspen jointly and severally liable for the damages resulting from Rollings's breach of contract, based on the jury's joint venture finding. Rollings moved for a take-nothing judgment and asked the trial court to disregard the jury's findings awarding Varosa damages. Tripplehorn did not file a motion to disregard the jury's findings, but did orally move for a take-nothing judgment at a post-trial hearing. Tripplehorn also filed a letter brief with the trial court contending it was entitled to a take-nothing judgment because the jury did not find liability or assess damages against Tripplehorn, Aspen, or 1801 Corporation.

The trial court disregarded the jury's findings that Varosa breached the agreement and was first to breach, and awarded Varosa $892,000 against Rollings,

6

plus attorney's fees. It also disregarded the jury's joint venture finding and rendered a take-nothing judgment as to Tripplehorn, Aspen, and 1801 Corporation. Varosa appeals.

On appeal, Varosa contends that the judgment should be reversed and that Tripplehorn and Aspen should be held jointly and severally liable for Rollings's breach for two independent reasons: (1) the jury's joint venture finding was supported by legally sufficient evidence, and (2) the trial court lacked authority to disregard the joint venture finding because Tripplehorn and Aspen did not move to disregard. Tripplehorn and Aspen contend they did move to disregard and thus gave the trial court the necessary power to do so. They additionally contend that the trial court's judgment should be affirmed because Tripplehorn and Aspen did not know about Rollings's contract with Varosa or benefit from the transaction.

## A. Standard of Review

A trial court may grant a motion for JNOV if a directed verdict would have been proper. *See* TEX. R. CIV. P. 301. The jury's verdict should be set aside only if the evidence at trial would not enable reasonable and fair-minded people to reach the verdict under review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005). We review a trial court's grant of JNOV under a legal sufficiency standard, viewing the evidence and inferences in the light most favorable to the jury's finding, crediting favorable evidence if reasonable jurors could and

7

disregarding contrary evidence unless reasonable jurors could not. *Id.* at 823, 827 ("[T]he test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review."). To sustain the grant of JNOV, the record must show one of the following: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

## B. Applicable Law

A joint venture is a distinct legal entity. *Milberg Factors, Inc. v. Hurwitz-Nordlicht Joint Venture*, 676 S.W.2d 613, 616 (Tex. App.—Austin 1984, writ ref'd n.r.e.). This relationship is similar to a partnership, but the principal distinction is that a joint venture is usually limited to one particular enterprise. *Ben Fitzgerald Realty Co. v. Muller*, 846 S.W.2d 110, 120 (Tex. App.—Tyler 1993, writ denied); *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 713 (Tex. App.—Houston [1st Dist.] 1988, writ denied). A joint venture must be based on an agreement, either express or implied. *Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex. 1978). A joint venture exists where there is: (1) a community of interest; (2) an agreement to share profits; (3) an agreement to share losses; and (4) a mutual right

of control or management of the enterprise. *Id.*; *Swinehart v. Stubbeman, McRae, Sealy, Laughlin & Browder, Inc.*, 48 S.W.3d 865, 879 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A joint venture is not established if any one of the four elements is missing. *Swinehart*, 48 S.W.3d at 879.

## C. Analysis

Here, the jury responded "yes" to Question 1, which asked, "Did Jake Rollings d/b/a Jake's Equipment and Repair fail to comply with the agreement of September 8, 2006?" In Question 13, the jury found that "David Tripplehorn, on behalf of Aspen Development, LLC, enter[ed] into a joint venture with Jake Rollings authorizing Jake Rollings to purchase and re-sell the used Franks Cabot 750 Drilling Rig." The jury was instructed that "[a] joint venture exists if the persons concerned have an agreement that has the following elements:

    (1) a community of interest in the venture,
    (2) an agreement to share profits,
    (3) an express agreement to share losses, and
    (4) a mutual right of control or management of the venture."

The evidence at trial was legally sufficient to support the jury's finding in Question 13. First, with respect to a community of interest in the venture, Tripplehorn testified that he and Rollings agreed that each of them would pay half the purchase price of the rig. Tripplehorn would hold title to the rig, while Rollings refurbished it. And Tripplehorn would convey the title to the purchaser of the refurbished rig after Rollings refurbished the rig, found a purchaser, and

9

received payment for the rig. *See Hasslocher v. Heger*, 670 S.W.2d 689, 693 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) (community of interest means a commonly shared incentive between the parties as to the progress and goals of the joint venture).

The evidence also demonstrates that the parties had an express agreement to share all profits and losses, and that they shared a mutual right of control. Specifically, each time Tripplehorn invested with Rollings, they agreed to share both profits and losses equally. With respect to control, the evidence showed that Rollings controlled the refurbishment and was responsible for purchasing and selling the equipment, while Tripplehorn held title and thus had ultimate control over whether to enter into a transaction for the sale of the refurbished equipment. *See Coastal Plains Dev. Corp.*, 572 S.W.2d at 287; *Swinehart*, 48 S.W.3d at 879; *see also Moody v. Betz*, No. 01-96-00220-CV, 1998 WL 394312, at *7 (Tex. App.—Houston [1st Dist.] July 16, 1998, no pet.) (not designated for publication) (stating that joint venturers share a mutual right of control, which may or may not be equal).

Our conclusion that sufficient evidence supports the jury's joint venture finding, however, is not dispositive. Rather, to obtain reversal, Varosa must also show that the trial court's error in disregarding that finding probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1) ("No judgment

10

may be reversed . . . unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment."); *see Mandell v. Mandell*, 310 S.W.3d 531, 542 (Tex. App.—Fort Worth 2010, pet. denied) (overruling claim that trial court erred in rendering JNOV where there was no showing that grant of JNOV had resulted in rendition of improper judgment).

Here, the jury found breach on the part of *Rollings* and found that Rollings and Tripplehorn, on behalf of Aspen, formed a joint venture. But the jury made no finding that would support imposing liability for Rollings's breach of his contract with Varosa on the joint venture or any individual or entity other than Rollings.

A joint venturer, like a partner in a partnership, is jointly and severally liable for joint venture debts and obligations. *See* Tex. Bus. Orgs. Code Ann. § 152.304 (West 2011); *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988). But a joint venturer may be held liable only for obligations made on behalf of the joint venture. *See R.L. Lipsey, Inc. v. Panama-Williams, Inc.*, 611 S.W.2d 917, 920 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (one joint venturer has the authority to bind other joint venturers by contracts made in furtherance of the joint enterprise); *see also* Tex. Bus. Orgs. Code Ann. § 152.302 ("[A]n act of a partner, including the execution of an instrument *in the partnership name*, binds the partnership if the act is apparently for carrying on in the ordinary course (1) the partnership business; or (2) business of the kind carried on by the partnership."

11

(emphasis added)); *First State Bank of Riesel v. Dyer*, 151 Tex. 650, 653 (Tex. 1953) (use of an individual name on contract raises a presumption that the transaction is an individual and not a partnership matter; if partner acts as principal and not as agent, as a general rule he alone is liable for the transaction); *cf. Corinth Joint Venture v. Lomas & Nettleton Fin. Corp.*, 667 S.W.2d 593, 595–97 (Tex. App.—Dallas 1984, writ dism'd) (agreement, executed by joint venturer, was binding on joint venture where agreement clearly contemplated the existence of the joint venture).

Here, Rollings is the only party to the contract with Varosa. The contract does not reflect that any individual or entity other than Rollings is a party to it or that it is an obligation of a joint venture or any individual or entity other than Rollings. And it is undisputed that Varosa did not know of the existence of Tripplehorn, Aspen, or the joint venture when it executed the contract. Because the contract is not a debt or obligation of the joint venture, as opposed to Rollings, it is not an obligation for which Tripplehorn may be held liable. *See* Tex. Bus. Orgs. Code Ann. § 152.302; *Dyer*, 151 Tex. at 653; *cf. Corinth Joint Venture*, 667 S.W.2d at 595–97. Accordingly, even if the trial court erred in disregarding the jury's finding in Question 13, we conclude the error was harmless.

Because we have determined that the trial court's grant of JNOV did not cause the rendition of an improper judgment, we need not reach Varosa's claim that the trial court erred by rendering JNOV sua sponte.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.