**BEN FITZGERALD REALTY COMPANY, Ben Fitzgerald and Taylor Burns, Appellants,**

v.

**Jean MULLER & Derel Muller, Appellees.**

**No. 12–90–00259–CV.**

Court of Appeals of Texas, Tyler.

Jan. 8, 1993.

Rehearing Denied Feb. 11, 1993.

Keith Dollahite, Tyler, for appellants.

Paul S. Colley, Jr., Tyler, for appellees.

1. The panel before whom this cause was submitted consisted of T.C. Chadick, retired chief justice Court of Appeals, Sixth District of Texas at Texarkana. Honorable Gerald T. Bissett, retired justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi. Honorable

BISSETT, Justice (Retired).[1]

Our previous opinions and judgments are withdrawn and this opinion is substituted for the former opinions and is the opinion of this Court. Appellees' Motion for Rehearing, filed in this Court on October 8, 1992, is granted.

This is an appeal by some of the defendants from a judgment rendered against them in an action brought to recover damages for personal injuries allegedly sustained by the plaintiff Jean Muller, for breach of warranties and for violation of the Deceptive Trade Practices–Consumer Protection Act. Following a trial to the court, judgment was rendered that the plaintiffs recover "from the defendants" (a joint judgment) the sum of $106,576.71, which included $60,202.27 for actual damages, $26,307.03 for pre-judgment interest, and $20,067.71 for attorney's fees, together with court costs. We reverse and render.

## THE PLEADINGS

Plaintiffs Jean Muller and husband, Derel Muller, hereafter referred to either by name, the "Mullers" or "plaintiffs," filed this suit on November 6, 1986. Plaintiffs' petition, their trial petition, is couched in the most general terms; no specifics were alleged. Plaintiffs alleged generally that they "contracted with the defendants to construct a residence" for them; that "Defendants warranted that the house would be built in a good and workmanlike manner;" that "Defendants were negligent in the construction of the residence referred to herein, and that as a direct and proximate result of such negligence plaintiffs have been damaged as herein alleged;" that they "sue herein for appropriate relief for personal injuries and property damages incurred;" that "Defendants made various representations and warranties to the Plaintiffs," which were relied on by plaintiffs, and "Defendants breached the warranties and representations and such

Jackson B. Smith, Jr., retired justice, Court of Appeals, First District of Texas at Houston, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988).

breaches constitute violations of various sections of the Deceptive Trade Practices Act." The issues regarding personal injuries to Jean Muller and breach of warranties were tried by consent. The defendants did not file any exceptions to plaintiffs' petition and did not object to the introduction by plaintiffs of evidence relating to the issues of partnership or to the issues of liability for personal injuries to Jean Muller or damages for breach of warranties.

The defendants, Ben Fitzgerald Realty Company, Ben Fitzgerald and Taylor Burns answered by way of general denial and pleaded the affirmative defense of the statute of limitations. Jack Jones did not file an answer, but did appear "pro se" at the trial and testified.

All defendants except Jack Jones have timely perfected an appeal from the judgment. The defendants, Ben Fitzgerald Realty Company, Ben Fitzgerald and Taylor Burns, will henceforth be referred to either by name or as "the appealing defendants."

■ Before reviewing the points of error presented by the appealing defendants, we discuss the contentions made by the plaintiffs in their reply brief that the appealing defendants waived any defense "regarding the existence of the partnership (Dickey Construction Company composed of the partners Ben Fitzgerald, Jack Jones and Taylor Burns)," or "regarding the capacity in which they were sued" by their failure to file a verified denial pursuant to Rule 93, TEX.R.CIV.P. We do not agree.

Plaintiffs' original petition named as defendants to this suit: "Ben Fitzgerald, individually;" "Ben Fitzgerald Realty Company, d/b/a Dickey Construction;" "Taylor Burns, individually and d/b/a Dickey Construction;" and "Jack Jones, individually and d/b/a Dickey Construction." Those names appear in the first paragraph of the petition. Thereafter, reference is made to them as "defendants." "Dickey Construction" was not named as a defendant. There is no allegation that "Dickey Construction" was a partnership or that any of the defendants, including Jack Jones, were partners in the firm known as "Dickey Construction." Plaintiffs' petition does not contain any allegation of existence of any partnership and no allegation of facts which would constitute existence of the "Dickey Construction" partnership, or the partners therein. *See Texaco, Inc. v. Wolfe,* 601 S.W.2d 737, 740 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). To put it simply, all defendants were sued as individuals and not as partners in any partnership. This is so even though plaintiffs attached a copy of a letter to their petition, identified as Exhibits A, B and C,[2] signed by their attorney, dated April 4, 1986, and addressed to each defendant, reading in pertinent part to-wit:

> Our law firm has been retained to represent Mr. and Mrs. Derel Muller regarding a claim against Jack Jones and Dickey Construction Company. This claim arises from the construction of a single family residence located on Lot 107, Lakeshore Drive, Horseshoe Club Lake Subdivision, Smith County, Texas. The construction was completed in 1978

> . . . . .

> It is my understanding that Dickey Construction Company is no longer in business but was comprised of three individuals in an equal partnership. Each partner owning one-third of the business. The partners formerly comprising Dickey Construction Company were Jack Jones, Taylor Burns and you.

> . . . . .

> Plaintiffs would show that they have complied with the notice provisions of the Texas Deceptive Trade Practices Act in that they notified all Defendants in writing of the complaints made in this Petition. Such written notice to each Defendant is evidenced by the Exhibits A, B and C attached hereto.

Paragraph 6 of this petition reads:

> Plaintiffs would show that they have complied with the notice provisions of the Texas Deceptive Trade Practices Act in that they have notified all Defendants in

---

**2.** Exhibit A is a copy of the letter sent to Ben Fitzgerald; Exhibit B is a copy of the letter sent to Taylor Burns; and Exhibit C is a copy of the letter sent to Jack Jones.

writing of the complaints made in this Petition. Such written notice to each Defendant is evidenced by the Exhibits A, B and C attached hereto.

Even though reference to Dickey Construction Company as being a partnership is made in the letter exhibit, the petition does not allege that Dickey Construction is a partnership and that Ben Fitzgerald, Jack Jones and Taylor Burns were partners therein. The letter was not incorporated in the petition for the purpose of alleging a partnership. Paragraph 6 of the petition, quoted above, limits the letter exhibits to notice required by the Texas Deceptive Trade Practices Act. Therefore, the appealing defendants' general denial was sufficient to put only their individual liability in issue since they were sued only in their individual capacities. However, the existence of partnership was tried by consent. As hereinbefore noted, the petition did not allege a cause of action against Dickey Construction Company, a partnership, nor did it allege a cause of action against any of the defendants in their capacities as partners in any partnership. The relief sought by plaintiffs in their prayer was that they have a joint and several judgments "against all defendants." Therefore, since the petition did not allege a partnership, a verified denial of partnership was not required. *See* 57 TEX.JUR.3D, Partnership, § 225.

### FACTS

Jean Muller had been in the business of selling houses for 20 years. She began work as a realtor with Ben Fitzgerald Realty Company in 1977, and left after six and one-half years. In 1977, Jean Muller and her husband, Derel Muller, owned a lot at Horseshoe Club Lake near Chappel Hill. They decided to build a house on the lot and had someone draw up house plans for them.

In 1977, Taylor Burns and Jean Muller were co-workers at Ben Fitzgerald Realty Company. Mrs. Muller asked Taylor Burns about a contractor and Mr. Burns suggested "that maybe Jack Jones might be interested in building" her house. Jack Jones, Ben Fitzgerald, and Taylor Burns "had what they called Dickey Construction" and "they were in the process of building several spec[3] homes." Jack Jones, under the name of "Dickey Construction" acted as contractor and was responsible for the physical construction of houses. Ben Fitzgerald and Taylor Burns were not involved in the physical construction of houses; their role was limited to arranging financing. The Mullers, however, arranged their own financing for the construction of their house.

Jean Muller testified that Taylor Burns said "their fee" (referring to Jack Jones, Ben Fitzgerald, and Taylor Burns) was normally 15% of the cost, but since she was an employee, "they would let me have it at 12% above cost." Jean Muller never had any conversations with Ben Fitzgerald nor Fitzgerald Realty Company concerning construction of the house. She did not have any further conversations with Taylor Burns until some time after construction began.

Jean Muller approached Jack Jones about building her house. She showed him her house plans and Jack Jones gave her a projected cost of construction. It was agreed between Jack Jones and the Mullers that the former would build the house in accordance with the plans. However, the record does not contain a written contract between them and there is no showing in the record of any detailed oral agreement concerning the specifications. It appears that the house was built solely on the basis of the house plans, customary industry practices and all applicable building codes.

Construction of the house began in September 1977 and ended in August 1978. Jack Jones acted as general contractor and contracted with subcontractors such as electricians and carpenters, but did not do any of the physical construction himself. The house plans Jean Muller provided to Jack Jones called for a decorative beam 32 feet long spanning across the cathedral ceiling in the family room. The 32–foot

---

3. "Speculative" homes as distinguished from "custom homes."

beam was strictly cosmetic; it did not serve any structural role and was not designed to be a weight bearing beam. The fact was made known to Jean Muller before construction began. Jean Muller testified that Jack Jones built that room with the beam in it "like the plans" she gave to him, and "I requested him to build my house like those plans if he could, and in fact did." Two light fixtures were fastened to the beam when the house was being built. It was this decorative beam that fell on December 14, 1985 and injured Jean Muller. It was admitted by Jean Muller that Jack Jones installed the decorative beam in accordance with the plans she provided to him. She also admitted that after the house was built and she decided to install ceiling fans on the beam, she "chose to rely on an electrician to determine whether the structure was heavy enough to support the fans, rather than a carpenter." She did not contact Jack Jones about her desire to install the fans on the beam. It was undisputed that the building inspector for the City of Tyler approved the construction of the house.

The Mullers created a bank account styled "Muller House Account." Jack Jones and his wife were on the signature cards for the account, which was used to pay Jack Jones' subcontractors during construction. Jean Muller periodically deposited additional funds in the account for Jack Jones to pay subcontractors. Both Jack Jones and his wife drew checks on the construction contract. The closing on the construction of the house occurred in August 1978. Jean Muller wrote a check payable to Jack Jones in the amount of $13,-000.00 as final payment for the construction. Jack Jones gave her a one-page closing statement, which referred to a "profit" of $8,594.68. Jean Muller did not discuss the "profit" at the closing with Jack Jones, or with either Ben Fitzgerald or Taylor Burns. Thereafter, Jack Jones deposited the final payment check in an account styled "Dickey Construction No. 2". Jack Jones' wife issued three separate checks on the "Dickey Construction Company No. 2" account to Jack Jones, Taylor Burns, and Ben Fitzgerald. Each check represented one-third of the $8,594.68 "profit" from construction of the house.

In August 1980, the Mullers, without consulting Jack Jones or any of the appealing defendants, hired an electrician to remove the two light fixtures on the beam which had been placed thereon during the construction of the house. The electrician, at the express direction of Jean Muller, replaced the light fixtures on the beam with two ceiling fans which were attached to the beam by extension bars that were each six to eight feet long. Jean Muller testified that she did not talk to anyone about whether the beam would support the weight and vibration of two ceiling fans: she "assumed that [the electrician] knew what he was doing." She did not discuss modifying the design of the decorative beam by installing ceiling fans with Jack Jones, Ben Fitzgerald, Taylor Burns, Ben Fitzgerald Realty Company, or anyone in the construction business.

Jack Jones testified that ceiling fans were not used in the Tyler area in 1978 and it was not foreseeable when the house was constructed that the Mullers would install ceiling fans on the beam. No one controverted or disputed that testimony. He further testified that the decorative beam was simply not designed to hold ceiling fans, which are heavier than light fixtures and which swing or vibrate when the fans are in use, and that the Mullers' installation of the two ceiling fans was a significant modification of the original plans pursuant to which the house was built. Jack Jones also said that the cost of the house was approximately $80,000 and further testified in response to questions asked him by counsel for plaintiff, as follows:

Q: When you build an $80,000 home, would it be fair to say that the customer would expect it to last and be safe and liveable for much longer than seven?

A: Yes, and at this time I would like to say that it was suggested that we put beams in, cross beams to tie the two outside structures and pull it together.

Q: Okay, let me ask you about that Mr. Jones.

A: To make it stronger.

Q: Are you telling Judge Kent that you had a concern about hanging this beam 32 feet?

A: Not the beam per se. Without fans being hung on it, I think that there would have been no problem. But if we had put the cross bracing in there, as was suggested, possibly it could have eliminated some of the problem there, and would definitely, if it had fell, it wouldn't have come to the floor.

Q: All right.

A: By tieing together this direction, at the time of construction, we were having a separation here that was putting strain here, and we wanted a brace across, which she wanted absolute clear span and would not do it, so we came over and braced elsewhere.

Q: Were there beams going crossways on this ceiling do you recall?

A: No, we wanted to put them in.

Q: You're saying there were no beams there that you recall?

A: That's correct.

Q: And you are telling Judge Kent that you had a concern about hanging this beam?

A: Not about hanging the beam, but the room, we wanted more strength across here to put less strain on this area and this area.

Q: But you didn't do that?

A: No, she would not let us do that.

Q: Were you concerned at all about hanging this beam that eventually fell?

A: No.

Q: Did you express any concern to Jean Muller or Mr. Muller that it might be unsafe or not a good practice to hang that 32 foot beam?

A: No, we did not because this was common everyday practice, it was approved anytime we built in the City Limits, it had to be approved by the Tyler Building Inspector, and he approved this type of construction for us on a daily basis.

. . . . .

Q: All right. So, you had a concern about the stress on the width of the room, am I correct?

A: Correct.

Q: And it is your testimony that you expressed that concern to Mrs. Muller?

A: I did.

Q: All right. Regardless of what was said in that conversation, you didn't make the changes or the alterations that you thought should be made?

A: You don't make changes on someone's house without their consent.

. . . . .

A: That's right, we discussed running across here to keep these walls from moving out, which would have let this start sagging in the center.

Q: And what was the result of that conversation?

A: Wanted absolute open view area.

Q: Would it be a fair statement that Mrs. Muller did not follow your advice as the builder in putting in the cross beam that you suggested?

A: That's correct.

. . . . .

Q: In your opinion when those fans replaced the two light fixtures, was that a significant modification made to that room?

A: Definitely. Significant enough to cause the problem.

The testimony of Jack Jones was not disputed by anyone. The fans were used regularly to circulate the air in the room for five years before the beam fell and injured Mrs. Muller.

Bruce Ballow was the carpenter in charge of constructing the house and was the only other witness who testified about the manner in which the house was built. He said the beam was not designed as a weightbearing beam that would hold two operating ceiling fans. Neither of the plaintiffs controverted his testimony; all that they said was that the decorative beam was not built and installed in a safe manner.

## FINDINGS AND CONCLUSIONS

Findings of fact and conclusions of law were made and filed by the trial court. The findings were not separated from the conclusions. In summary, the trial court found and concluded:

1. Plaintiffs' claims against all defendants are not barred by any applicable statute of limitations.

2. A partnership or joint venture exists between Ben Fitzgerald, individually, Ben Fitzgerald Realty Company, Taylor Burns and Jack Jones.

3. Each defendant violated one or more provisions of the Texas Deceptive Trade Practices Act, and that such violations were a proximate and/or producing cause of the damages sustained by the plaintiffs.

4. The defendants did not construct plaintiffs house in accordance with the plans and specifications prepared by the plaintiffs and submitted to the defendants.

5. The defendants Ben Fitzgerald Realty Company, Ben Fitzgerald and Taylor Burns were negligent individually, and d/b/a Dickey Construction were negligent on the occasion in question, and such negligence was a proximate cause of the plaintiffs' damages.

6. The defendants Ben Fitzgerald Realty Company, Ben Fitzgerald and Taylor Burns, individually, and d/b/a Dickey Construction, breached the contract and warranty to plaintiffs, and such breach was a proximate cause of plaintiffs' damages.

## THE APPEAL

The appealing defendants contend in their third point of error that the trial court erred in refusing to find and conclude that the claims of the Mullers were barred by the applicable statute of limitation. We disagree. The plaintiffs alleged, among other allegations:

[P]laintiffs herein contracted with the various defendants to construct a residence. Such contract was executed and performed during the period of time from 1977 through 1979. Defendants warranted that the house would be built in a good and workmanlike manner, that the residence would be fit for the ordinary purpose for which it was intended, that such residence would pass without objection in the trade or injury, that such residence would meet the reasonable expectations of the consumer, i.e., plaintiffs herein, and that such residence would be fit for habitability by plaintiffs herein.

The plaintiffs further pleaded that the defendants were negligent in the construction of the residence and breached the warranties attendant with such construction, all of which proximately caused the damages for which they sued.

We summarize the evidence pertinent to the statutes of limitation being a bar to this suit. Construction of the house was completed in August 1978. The beam fell and injured Jean Muller on December 14, 1985. Suit was filed on November 6, 1986.

TEX.BUS. & COMM.CODE ANN. § 17.565 (Vernon 1968) states:

All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

■ A homeowner's action against a builder for breach of implied warranties is barred four years from the time the homeowner knew of the alleged defect. *Conann Constructors v. Muller*, 618 S.W.2d 564 (Tex.Civ.App.—Austin, 1981, writ ref'd n.r.e.); *Forestpark Enterprises, Inc., v. Culpepper*, 754 S.W.2d 775 (Tex.App.—Fort Worth 1988, no writ).

■ Jean Muller testified that she is not an expert in the construction business and relied on Jack Jones to build the home in a good workmanlike manner and safe for the consumer. She could not have discovered in the exercise of reasonable diligence that the beam would, in all reasonable probability, fall at some future time even though she had knowledge that the decorative

beam was not a load-bearing beam prior to August of 1978. That knowledge does not give rise to the assumption that she knew or should have known that the home was not built as warranted. The alleged defect was not that the beam was unable to hold the ceiling fans, but that the home was not constructed in a good and workmanlike manner and it was not fit for human habitation in that it was not constructed in such a manner as to keep the beam in place through its foreseeable use. "The time period for limitation begins to run when the damages actually begin to show on the completed house." *Cocke v. White*, 697 S.W.2d 739 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

"A builder-vendor impliedly warrants that a residence is constructed in a good, workmanlike manner and is suitable for human habitation." *Diamond v. Meacham*, 699 S.W.2d 950, 952 (Tex.App.—El Paso 1985, writ ref'd n.r.e.). Subchapter E headed "Deceptive Trade Practices and Consumer Protection" provides a cause of action for breach of an express or implied warranty. Since the limitation section includes "all actions brought under this subchapter," it must necessarily include actions such as this one under section 17.-50(a)(2) for breach of warranty. The trial court was correct in refusing to find and conclude that the claims of the Mullers were barred by the applicable statutes of limitations. The third point of error is overruled.

■ The remaining points of error presented by the appealing defendants are "no evidence" and, in the alternative, "factually insufficient evidence" points. Where both "no evidence" and "factually insufficient evidence" points are raised, the appellate court should rule on the "no evidence" points first. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981).

■ In reviewing the "no evidence" points an appellate court considers only the evidence and reasonable inferences therefrom, which, when viewed in the most favorable light, support the findings of the fact finder, in this case the trial judge, and disregards all evidence and inferences which are contrary to the findings. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987); *McKnight v. Hill & Hill Exterminators*, 689 S.W.2d 206, 207 (Tex.1985).

■ In reviewing "factually insufficient evidence" points, a court of appeals reviews all of the evidence and should set aside the findings by the trier of fact only if they are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Moreover, in deciding factually insufficient evidence points, the court of appeals should, in its opinion, detail the evidence relevant to the point and state why the finding is factually insufficient. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). *See also, Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 462 (Tex.1992).

■ The appealing defendants claim in their first point of error that the trial court erred in holding that Ben Fitzgerald Realty Company was liable in damages to Mr. And Mrs. Muller because there was no evidence to support any theory of liability against it, and alternatively, the evidence was factually insufficient to support any such theory of liability against it.

There is no evidence to support the trial court's findings, conclusions, and judgment that Ben Fitzgerald Realty Company was liable in any capacity to the Mullers. Ben Fitzgerald Realty Company was mentioned in the evidence only in connection with Jean Muller's employment at Ben Fitzgerald Realty Company. There was no evidence of the nature of the relationship, if any, between Ben Fitzgerald Realty Company and any other defendant, or between it and Dickey Construction Company. There was no proof that Ben Fitzgerald Realty Company was in any way involved, directly or indirectly, in the construction of the Muller's house. No evidence supports the trial court's finding and conclusion that Ben Fitzgerald Realty Company was negligent, breached any contract or warranty, or proximately caused any damages to the Mullers. There is no basis for holding that Ben Fitzgerald Realty Company violated

the Deceptive Trade Practices Act; nor was there any proof of a partnership or joint venture involving Ben Fitzgerald Realty Company. The first point is sustained.

The appealing defendants assert in their second point of error that the trial court erred in finding and concluding that a partnership or joint venture existed between Jack Jones, Ben Fitzgerald and Taylor Burns. They argue that there is no evidence to support such finding and conclusion, and alternatively, the evidence was so factually insufficient as to render such finding and conclusion manifestly unjust.

The Texas Uniform Partnership Act,[4] TEX.REV.CIV.STAT.ANN. art. 6132b § 6(1) (Vernon 1970), defines a partnership as:

An association of two or more persons to carry on as co-owners a business for profit.

Rules for determining the existence of a partnership are set out in Section 7(3), (4) of the Act, which State in relevant part:

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business....

It is well settled that the burden of proof is on the person seeking to establish the existence of a partnership or joint venture. *Rogers v. Butler*, 563 S.W.2d 840, 842 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.).

To establish a partnership or joint venture, a party asserting the same must establish *each* of the following elements: 1) a community of interest in the venture; 2) an agreement to share profits; 3) an agreement to share losses; and 4) a mutual right of control or management of the enterprise. *Coastal Plains Development Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex.1978); *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704 (1956); *Gutierrez v. Yan-*

*cey*, 650 S.W.2d 169, 171–172 (Tex.App.—San Antonio 1983, no writ); *Fry v. Shaw*, 508 S.W.2d 142, 145 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.).

The principal distinction between a joint venture and a partnership is that a joint venture is usually limited to one particular enterprise. *State v. Houston Lighting & Power Co.*, 609 S.W.2d 263 (Tex.Civ.App.–Corpus Christi 1980, writ ref'd n.r.e.); *North Texas Lumber Co. v. Kaspar*, 415 S.W.2d 470, (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.). As a general rule, a joint venture is governed by the same rules as a partnership, and vice versa. *Henrich v. Wharton County Livestock, Inc.*, 557 S.W.2d 830, 833 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Douglas v. Neill*, 545 S.W.2d 903, 906 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Weatherford v. Lee*, 364 S.W.2d 730, 733 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.).

No single fact may. furnish a complete basis for the holding that a partnership existed. A partnership or joint venture is not established merely by evidence of an agreement to share profits; such an agreement is simply some evidence tending to establish a partnership, and is not all inclusive or controlling. *Davis v. Gilmore*, 244 S.W.2d 671, 673 (Tex.Civ.App.—San Antonio 1951, writ ref'd). The question of partnership is primarily a question of fact. *Fuller v. Fuller*, 518 S.W.2d 250, 251 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.); *Arnold v. Caprielian*, 437 S.W.2d 620, 625 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.). The trier of fact must consider all of the evidence and make a fact finding as to whether all of the elements necessary to establish a partnership are present in determining whether a partnership exists. The intention of the parties who are alleged to be partners is a prime element in determining whether a partnership exists. *Micrea*, 572 S.W.2d at 287; *Luking Oil & Gas Co. v. Humble Oil and Refining Co.*, 144 Tex. 475, 191 S.W.2d 716, 722 (1945).

---

**4.** Hereafter, "the Act."

■ For a joint venture or a partnership to exist, there must be an agreement to share *both* profits and losses, if any. *Brown v. Cole,* 291 S.W.2d at 709; *Gutierrez v. Yancey,* 650 S.W.2d at 171–172; *Fry v. Shaw,* 508 S.W.2d at 145. As a matter of law, there is no partnership or joint venture unless all four of the elements set out in *Micrea, Inc.,* 572 S.W.2d at 287 are shown to exist. *Ayco Development Corp. v. G.E.T. Service Co.,* 616 S.W.2d 184, 185 (Tex.1981).

■ Parties' use of an assumed name, standing alone, is not sufficient to establish a partnership or joint venture. *Scanlan v. Gulf Bitulithic Co.,* 44 S.W.2d 967, 972 (Tex.Comm.App.1932, holding approved); *State v. Houston Lighting & Power Co.,* 609 S.W.2d 263, 268 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Negrini v. Plus Two Advertising Inc.,* 695 S.W.2d 624, 631 (Tex.Civ.App.—Houston [1st Dist.] 1985, no writ).

■ Mere legal conclusions by a lay witness (Jack Jones in this case) do not prove the existence of a partnership or joint venture. *Murphy v. McDermott, Inc.,* 807 S.W.2d 606, 613 (Tex.App.—Houston [14th Dist.] 1991, writ denied). *See also, Life Ins. Co. of Virginia v. Gar–Dal,* 570 S.W.2d 378, 382 (Tex.1978) where it was held that the testimony of a lay witness "that all payments are offsets had not been allowed, without more, would be a pure conclusion." Therefore, the statement by Jack Jones that he, Taylor Burns and Ben Fitzgerald "were partners on the job" was a pure legal conclusion.

In *United States v. $47,875.00 in U.S. Currency,* sometimes referred to as *"United States v. Lucas,"* 746 F.2d 291, 294 (5th Cir.1984), Wardell A. Lucas and Maggie J. (Jo) Lucas, sued to recover certain money seized by the federal authorities in a "drug bust." The claimants contended that the money involved belonged to them since it represented the financing of a joint venture with their son Randall W. Lucas (who was in possession of the money when it was seized by the federal officers) to purchase used drill bits. The court disagreed and stated:

Under Texas law, a joint venture must be based on either an express or implied agreement containing these essential elements: (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise. *Coastal Plains Development Corp. v. Micrea, Inc.,* 572 S.W.2d 285, 287 (Tex.1978); *see Ayco Development Corp. v. G.E.T. Service Co.,* 616 S.W.2d 184, 186 (Tex.1981). Where any one of these elements is absent, no joint venture exists.... While there was some evidence of a community of interest, mutual right of control, and an agreement to share profits, claimants presented no evidence whatsoever of an agreement to share losses. Thus, under well settled Texas jurisprudence, as a matter of law there was no joint venture in existence between claimants and their son. *See Sherrill v. Bruce Advertising, Inc.,* 538 S.W.2d 865, 866 (Tex.Civ.App.—Houston 1976, no writ); *see also, Raybourn v. Lewis,* 567 S.W.2d 908, 911 (Tex. Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

Concerning the issue of whether Ben Fitzgerald, Taylor Burns and Jack Jones were partners in Dickey Construction, Jean Muller testified that: 1) everybody knew that they were partners in building homes; 2) she "understood" that they were partners in Dickey Construction; and 3) she did not have any knowledge of what each contributed to the partnership.

Evidence that construction proceeds of the house were placed into an account by Jack Jones' wife of "Dickey Construction Co.," and that checks were written on that account to Ben Fitzgerald and Taylor Burns, are not, of themselves, sufficient to establish a partnership or joint venture.

Jean Muller admitted that she never spoke to Ben Fitzgerald about the construction of her house. There is no evidence that Ben Fitzgerald was in any way involved in the construction efforts of Jack Jones. Taylor Burns' involvement was limited to an initial conversation with Jean Muller concerning her desire to build a

house, the recommendation of Jack Jones as a contractor, a telephone message he took for Jean Muller relating to the construction, and conversations with her about construction delays. The evidence shows conclusively that Jack Jones, and no one else, was in complete charge and control of the construction of the house for the Mullers.

While Jack Jones concluded that a partnership existed, he did not testify as to any facts which would support his conclusion. Therefore, the partnership was not established as a matter of law on the basis of Jack Jones' assertion that a partnership existed. *Robinson v. First Natl. Bank of Marietta*, 98 Tex. 184, 82 S.W. 505, 506 (1904); *Nueces Trust Co. v. White*, 564 S.W.2d 798, 801 (Tex.Civ.App.—Corpus Christi 1978, no writ); *North Texas Lumber Co. v. Kaspar*, 415 S.W.2d at 474.

In *Coastal Plains Development Co. v. Micrea, Inc.*, 572 S.W.2d 285 (Tex.1978), the parties' contract provided for an equal division of profits and referred to their activities as a "joint venture." The Supreme Court held as a matter of law that a partnership or joint venture did not exist because there was no agreement to share losses. The court did not give any effect to the parties' labeling of their activities as a "joint venture," and said:

> We are not persuaded by the description of the relationship. . . . Just as the words used by the parties in a contract do not necessarily control the substance of the relationship, the terms used by the parties in referring to the arrangement do not control.

*Id.* at 288. The same is true of a partnership.

Before construction began, Jean Muller spoke once to Taylor Burns who referred her to Jack Jones. She never talked with Jack Jones about any division of profits, losses, or the relationship between him, Ben Fitzgerald and Taylor Burns. She "assumed" that the three men would be responsible for building her home. She did not testify about any agreement between Ben Fitzgerald, Taylor Burns, and Jack Jones to share losses or mutual right of control or management in constructing her house. Evidence that Jack Jones, Ben Fitzgerald, and Taylor Burns conducted business under the name "Dickey Construction" was, without more, insufficient to establish a partnership or joint venture.

The "conclusions" and "understandings" of Jean Muller have no probative value. As the authorities cited above hold for a partnership or joint venture to be established, in addition to evidence which shows that there was an agreement to show profits and the conclusion by a lay witness that a partnership (a legal term) existed, there must also be an agreement to share losses. Furthermore, there must also be evidence of a community of interests in the business and a mutual right of control or management of the enterprise. In the instant case, there was no evidence of: 1) an agreement to share losses; 2) a community interest in the building of the Muller home; or 3) a mutual right of control or management of the building of the Muller house. The Mullers did not establish as a matter of law the existence of a partnership. *See*, *Gutierrez*, 650 S.W.2d at 172. We hold that the trial court erred in concluding that a partnership or joint venture existed between Jack Jones, Ben Fitzgerald and Taylor Burns. Neither a partnership nor a joint venture was established as a matter of law or of fact. The second point of error is sustained.

The appealing defendants further claim in their fourth and fifth points of error, that the trial court erred in finding and concluding that Ben Fitzgerald and Taylor Burns were, in any capacity in which they were sued, negligent, breached any contract or warranties, violated the Deceptive Trade Practices Act, or proximately caused the injuries sustained by the Mullers. They also claim in their sixth point of error, their final point, that the trial court erred in rendering judgment against them in any capacity. All three points will be reviewed together.

We have heretofore set out and discussed all of the evidence relating to the issues presented by this appeal. There is no need to restate such evidence. After

considering only the evidence and reasonable inferences therefrom, which tend to support the findings by the trial court that Jack Jones, Ben Fitzgerald and Taylor Burns, were negligent, breached the contract or the warranties under the contract, or violated "one or more of the provisions of the Texas Deceptive Trade Practice Act," and disregarding all evidence and inferences to the contrary, we hold that there is no evidence to support such findings.

 Furthermore, there was no evidence that any act or omission of Jack Jones, Ben Fitzgerald, or Taylor Burns was a proximate or producing cause of damages to the Mullers. Negligence requires proof of proximate cause, which has two elements: cause in fact and foreseeability. *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223–224 (Tex.1988). A homeowner's claim under the Deceptive Trade Practices Act for breach of an implied warranty for the construction of a house requires proof of proximate cause. *Cocke v. White*, 697 S.W.2d 739 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Young v. DeGuerin*, 591 S.W.2d 296 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). Actual damages are recoverable in a breach of a contract case only when the loss is a natural, probable and *foreseeable* consequence of the defendant's conduct. *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981).

 The only evidence in the entire record concerning foreseeability conclusively negates the existence of proximate cause. As has been noted, Jack Jones testified that ceiling fans were not used in 1978 when the house was constructed and it was not foreseeable in 1978 that the Mullers would install ceiling fans on the decorative beam. There was no evidence to the contrary. The fourth and fifth points of error are sustained.

 Assuming for the sake of argument, that the evidence was legally and factually sufficient to support the conclusion that a partnership or joint venture existed between Jack Jones, Ben Fitzgerald, and Taylor Burns, there is no evidence which imposes liability against Ben Fitzgerald and Taylor Burns. Under a partnership theory or joint venture theory, the Mullers were required to establish liability of Jack Jones in order to hold Ben Fitzgerald and Taylor Burns liable in damages. The evidence conclusively negated the existence of negligence, breach of contract, breach of warranties, or violation of the Deceptive Trade Practice Act by Jack Jones; moreover, as has been stated there is no evidence of proximate cause, a necessary element of the Mullers' action against Jack Jones. Therefore, since liability was not established against Jack Jones, vicarious liability cannot exist against Ben Fitzgerald and Taylor Burns. Consequently, the trial court erred in rendering judgment against the defendants. This is so even though the judgment against Jack Jones is final. The fact that Jack Jones did not appeal does not prevent the appealing defendants from showing that he was not negligent, did not breach any contract or warranty and did not violate the DTPA, in order for them to prove that they are not vicariously liable. The sixth point is sustained.

 Plaintiffs argue in their current motion for rehearing that the appealing defendants cannot attack the judgment which convicted Jack Jones of negligence, breach of contract, breach of warranties, and violation of the Deceptive Trade Practices Act since the judgment against Jack Jones is now final as he did not appeal. In truth and in fact, there is no collateral attack on the judgment against Jack Jones. The appealing defendants attack the judgment that was rendered against them. Their attack is a direct attack on the joint judgment which imposes personal liability upon them as follows:

IT IS ORDERED, ADJUDGED and DECREED by the Court that the plaintiffs, JEAN MULLER and DEREL MULLER, do have and recover of and from the defendants, the sum of ONE HUNDRED SIX THOUSAND FIVE HUNDRED SEVENTY SIX DOLLARS AND SEVENTY ONE CENTS ($106,576.71). Said sum includes actual damages in the amount of $60,202.27 and pre-judgment

interest from the date of the occurrence in question until the date the judgment is signed in the amount of $26,307.03. Said sum further includes attorney's fees awarded in favor of the plaintiffs in the amount of $20,067.71.

The appealing defendants are entitled to a review of the entire record in support of their claims that the trial court erred in rendering judgment against them. Their rights should and must be determined under the entire record. It would be unjust and a travesty to preclude them from showing that they are not liable because Jack Jones did not appeal, and any attack by them on the judgment is a collateral attack because the judgment is a final judgment against Jack Jones. While we agree that the judgment against Jack Jones is final as to him and is not subject to collateral attack by him, we hold that the appeal by the defendants Ben Fitzgerald Realty Company, Ben Fitzgerald, individually, and Taylor Burns, individually, is not a collateral attack, but a direct attack on the judgment rendered against them.

### DISPOSITION OF THE APPEAL

The judgment of the trial court against the appealing defendants Ben Fitzgerald Realty Company, Ben Fitzgerald and Taylor Burns is reversed and judgment is here rendered that the plaintiffs Jean Muller and Derel Muller take nothing in their suit against those defendants.