United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 10, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

———————————————

No. 03-50695
Summary Calendar

———————————————

BRUCE SMILEY, Individually,                                              Plaintiff-Appellant,

versus

OXFORD CAPITAL, LLC, a New York Corporation,          Defendant-Appellee,

———————————————————————————

Appeal from the United States District Court
for the Western District of Texas
(Civil. No. SA-02-SA-305-JWP)

———————————————————————————

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

        Plaintiff-Appellant, Bruce Smiley ("Smiley") appeals the district court's grant of summary

judgment for Defendant-Appellee, Oxford Capital, LLC ("Oxford") dismissing Smiley's claims which

asserted that Oxford committed breach of contract and fraud when it failed to purchase a certain piece

of real estate.  Because we agree with the district court that Smiley, in his individual capacity, lacks

standing as a party who can bring the cause of action he pursues here, we affirm.

———————————————

        [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not
precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

DISCUSSION

I.       Facts & Procedural History

The underlying facts in this case are undisputed.  On May 29, 2001, New Bexar County Jail, Ltd. ("Bexar") entered into an Improved Property Commercial Contract ("IPCC No.1") with M.R. Roberts ("Roberts"), in which Bexar agreed to sell Roberts property located at 120 Camaron Street, San Antonio, Tx., or Lot 14, NCB 122 (the "Bexar Jail Property") for the price of $1.1 million.  On the same date, Roberts assigned his right to purchase the Bexar Jail Property to Smiley by writing such notation at the end of IPCC No. 1 below the parties' signatures.

On that same date, Smiley then executed an "Assignment of Earnest Money Contract" ("Assignment No. 1") assigning his right to purchase the Bexar Jail Property under IPCC No. 1 to an entity named Camaron Street Joint Venture.  Thus, at the end of the day on May 29, 2001, there existed a contract, IPCC No.1, between Camaron Street Joint Venture and Bexar under which the former had the right to purchase the Bexar Jail Property from the latter.

On July 10, 2001, an entity named Camaron Street J.V., M.R. Roberts Trustee ("Camaron Street JV")[1] entered into another Improved Property Commercial Contract ("IPCC No. 2") with Smiley, in which Camaron Street JV agreed to sell to Smiley the same Bexar Jail Property for the price of $1.8 million.  Although executed on July 10, 2001, a notation was made within the contract for it to be effective May 29, 2001.  On August 6, 2001, Smiley assigned his right to buy the property

---

[1] The district court presumed that Camaron Street J.V., M.R. Roberts Trustee entering into IPCC No.2 was the same entity that received the assignment of IPCC No. 1, Camaron Street Joint Venture, because the parties did not raise the issue.  Our review of the record reveals that this presumption appears correct, and the parties do not dispute it on this appeal.

from Camaron Street JV in IPCC No. 2 to Eugene Simor ("Simor") and Luis Murga ("Murga") by writing such notation at the end of IPCC No. 2 below the parties' signatures. On August 30, 2001, Simor and Murga then executed an "Assignment of Earnest Money Contract" ("Assignment No. 2") assigning their right to purchase the property from Camaron Street JV at the price of $1.8 million to Oxford. Included in Assignment No. 2 is the notation:

> In the event that Oxford Capital, LLC elects not to close on or before September 25, 2001, then upon automatic assignment from Oxford Capital LLC to Assignors herein [Simor and Murga], we hereby agree to assign such contract to Brice A. Smiley or assigns.

Therefore, at the end of the day on August 30, 2001, there existed two contracts, IPCC No. 1, as described above, and IPCC No. 2, between Oxford and Camaron Street JV, under which the former had the the right to purchase the Bexar Jail Property from the latter. In essence Camaron Street JV was the buyer under IPCC No. 1 and the seller under IPCC No. 2 of the same property.

The agreed terms of IPCC No.1 called for the parties to execute a closing on the Bexar Jail Property on August 27, 2001. On August 9, 2001, the closing date of IPCC No. 1 was amended to September 28, 2001, and on September 25, 2001, it was amended again to October 28, 2001, or, if needed, to November 28, 2001, with the payment of additional earnest money. The agreed terms of IPCC No. 2 called for a closing on August 27, 2001. On August 6, 2001, the closing date of IPCC No. 2 was amended to September 28, 2001, and on September 25, 2001, was amended again to November 28, 2001. No amendment was ever executed changing the date of automatic reversion or assignment from Oxford to Simor and Murga.

Oxford did not appear at the scheduled closing of IPCC No. 2 on November 28, 2001, to execute the purchase of the Bexar Jail Property. Smiley, individually, filed an action against Oxford alleging fraud and breach of contract on IPCC No. 2. Smiley then moved for summary judgment on

3

his breach of contract claim while Oxford moved for summary judgment dismissal of both of Smiley's claims.

II.    Standard of Review

This Court reviews the district court's grant of summary judgment *de novo*, applying the same standard on appeal that is applied by the district court. Lycon Inc. v. Juenke, 250 F.3d 285, 287 (5th Cir.), *cert denied,* 534 U.S. 892 (2001). "Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Interconti nental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987).

III.    Analysis

Smiley does not allege any breach or any other cause of action pursuant to IPCC No. 1. Therefore, our focus here will be only on IPCC No. 2, and whether the district court was correct to find that Smiley lacked standing to bring his claims pursuant to that contract.

Smiley's causes of action allege harm due to the failure of Oxford to purchase the Bexar Jail Property as prescribed by IPCC No. 2. Smiley asserts that he retains the required interest to bring suit because the language of Assignment No. 2 worked to revert such interest back to him. However, as the district court pointed out, assuming the reversionary language of Assignment No. 2 was effectual, any interest that Smiley may have in IPCC No. 2 is only as a buyer of the Bexar Jail

4

Propert y, not as a seller. The language of Assignment No. 2 would work to remove Oxford as a party to IPCC No. 2. If any party has standing to bring the type of suit that Smiley brings here it is Camaron Street JV, and it would be against Smiley, not Oxford. Smiley and Oxford were never opposing parties - buyer versus seller - to either of the contracts. Smiley's interests in both IPCC No. 1 and No. 2 were as a buyer, while Oxford's interest in IPCC No. 2 was also as a buyer. Thus, Smiley lacks the privity of contract with Oxford, as well as the enumerated contractual right to compel Oxford to buy the property, required to have standing here in his individual capacity. See Raymond v. Rahme, 78 S.W.3d 552, 561 (Tex. App. -- Austin 2002) (where parties lack contractual relationship, no breach of contract claim can be brought by either against the other); Dennis v. First State Bank of Tex., 989 S.W.2d 22, 27 (Tex. App.-- Fort Worth 1998) (citing Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976) ("Without the breach of a legal right belonging to the plaintiff, no cause of action can accrue to his benefit"); Rudolph v. ABC Pest Control, Inc., 763 S.W.2d 930, 933 (Tex. App. -- San Antonio 1989) (privity of contract required in order for a contact to be enforceable by a party). Furthermore, Smiley does not assert, nor can he assert, that he has standing as a third-party beneficiary. This is because there is an absolute absence of evidence that IPCC No. 2 was entered into with the explicit or implicit intent to benefit Smiley in any capacity. Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank, 678 S.W.2d 574, 577 (Tex. App. -- Houston [14th Dist.] 1984, writ ref'd n.r.e.) (Only if upon showing that parties to a contract intended to enter it for benefit of a non-party, can the non-party enforce the contract).

Smiley also argues, alternatively, that he has standing via his status as a principal in the Camaron Street JV. However, as the district court noted, there was no evidence on the record establishing that Smiley was in fact a principal in the Camaron Street JV nor that he had the authority

5

to bring the instant suit on its behalf. There only exists an affidavit in which Smiley asserts that he was the sole principal of Camaron Street JV. The mere assertion or legal conclusion by a party that they are a principal in a joint venture with authority to act on behalf of the joint venture is not sufficient summary judgment evidence. See Ben Fitzgerald Realty Co. v. Muller, 846 S.W.2d 110, 121 (Tex. App. -- Tyler 1993, writ denied) (legal conclusions alone will not prove existence of joint venture); Raybourn v. Lewis, 567 S.W.2d 908, 911 (Tex. App. -- San Antonio 1993, writ ref'd n.r.e.) (mere contention by party that he was part of joint venture insufficient evidence that such existed). In fact, the evidence that does exist tends to undermine Smiley's assertion that he is the sole principal of the Camaron Street JV. For example, the original parties of IPCC No. 2 were Smiley as buyer and Camaron Street JV as seller. Smiley signed on his own behalf, while an individual named M.R. Roberts signed on behalf of Camaron Street JV. Furthermore, as the district court correctly noted, if the reversio n language of IPCC No. 2 is given effect, as Smiley argues, and Smiley is indeed a principal of Camaron Street JV, then he would be on both sides, as seller and buyer, and only have a cause o f action against himself. This is because the reversion language clearly removes any involvement of Oxford as a party upon it not purchasing the property on the prescribed closing date.

## CONCLUSION

Because we affirm the district court's grant of Oxford's summary judgment motion to dismiss Smiley's claims for lack of standing, it is unnecessary for us to address the district court's alternative grounds for dismissal. It is also unnecessary for us to address the district court's alternative consideration and denial of Smiley's motions to supplement summary judgment evidence as well as its denial of Oxford's motion to strike portions of Smiley's summary judgment evidence.

6

AFFIRMED.