NUMBER 13-04-313-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RAUL TORRES, Appellant,


v.



DANNY RAY KELLEY, Appellee.

 


On appeal from the County Court at Law No. 4 


of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Wittig (1)


Memorandum Opinion by Justice Wittig


 

 Raul Torres, appellant, appeals the adverse judgment from a non-jury trial. In a
single issue, he contends the evidence is factually and legally insufficient and the judgment
should be reversed and rendered. Jurisdiction is invoked based upon Texas Rule of
Appellate Procedure 25.1(b). See Tex. R. App. P. 25.1(b). We affirm in part, and reverse
and render in part.

 1. Background

 Torres argued that he and appellee, Danny Ray Kelley, agreed to enter into a
partnership agreement in March 1999. Torres stated he was to be a 51% owner and
Kelley was to be a 49% owner. By October of the same year, the two had a falling out. 
Torres contends he never received any accounting or profits and was told by Kelley's wife
he had no legal standing to even obtain an invoice to bill a customer. Kelley opened a
business account in the spring of 1999 under his own social security number and in his
own name only. A written partnership agreement was not prepared until September 1999,
but there was no agreement by the two as to the terms of the partnership. The agreement
was never executed. 

 Nevertheless, the trial court found that there was a partnership, that Torres
terminated the partnership, removed and converted partnership property, invoiced
partnership customers for barrels sold under the name of a new company, and collected
funds for those invoices. The trial court's conclusions of law state that Torres converted
partnership assets and breached duties of loyalty and good faith. The trial court awarded
$866 to Kelley and ordered the return of 65 barrels (worth $400 to $500) removed from the
partnership offices. The "offices" were located in a warehouse owned and occupied by
another of Kelley's businesses, an "auto recovery" operation.

 2. Standard of Review

 We apply the same standards when reviewing the legal and factual sufficiency of
the evidence supporting the trial court's fact findings as we do when reviewing the evidence
supporting a jury's answer to a special issue. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.
1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). In considering Torres's
challenges, we utilize the normal standards of review. City of Keller v. Wilson, 168 S.W.3d
802, 822 (Tex. 2005) (standards for legal sufficiency review); Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986) (standards for factual sufficiency review).

 3. Analysis of Partnership

 Torres and Kelley had known each other since high school. According to Kelley,
they decided to start a partnership in March 1999. Kelley was to put up the money. His
attorney questioned: "And so how did - was this a partnership?" Kelley responded: "It -
well, it was I guess partnership verbally only because we never got around to getting the
paperwork signed." According to Kelley, the partnership was supposed to be a 50/50 split. 
According to Torres, the partnership was supposed to be a 51/49 split in favor of Torres. 
The written agreement that was never executed also provided for a 51/49 split. However,
Kelley insisted: "Even though it was going to be on paper the 51/49, it was still going to be
an even 50/50 split." 

 Torres continued to work for his old employer. Kelley filed an assumed name,
opened a bank account, and applied for a sales tax account, all under his signature and
utilizing his personal social security number. (2) Kelley testified, "I actually started it as a -
as an individual business, not as a partnership." According to Kelley, "It was going to be
a partnership when we signed the paperwork and when Rudy put up some money -
actually got some working capital into the business, but that never did transpire."

 During trial, the trial court noted that the prior testimony indicated there may have
been an "agreement to agree," rather than an agreement. Kelley then responded to the
judge: "Well we had a verbal partnership." According to Kelley, his wife kept pushing for
Torres to sign a partnership agreement. However, Torres continued to disagree with
"some things" in the agreement. Then, one September afternoon, Kelley's wife told Torres
that she was not going to do invoices for the partnership unless the two got together and
signed a partnership agreement. According to Torres, she told him he had no legal rights. 
Torres steamed out and removed the barrels that weekend.

 Torres complained he had no access to accounting, expenditures, or income. At
one time he did write a few checks to pay invoices, but could not see the balance on the
account; the balance on the account and other accounting issues were kept from him. 
Presumably, Torres's ability to write checks occurred after mid-September when, two
weeks before the breakup, Kelley put Torres's name on one bank account. Kelley
concedes that "Torres was given access to the partnership's finances approximately two
weeks before [Torres took action] and he knew or should have known that the partnership
had yet to become profitable . . . ." Thus, Kelley's brief is generally consistent with Torres's
claim that he did not have access to the finances. Torres admitted that he eventually
received check-signing privileges.

 About September 30, 1999, Mrs. Kelley told Torres, "You don't have anything
legally- you're only doing DBA, doing business as. You don't have a legal right." The
same day, Torres obtained his own EIN number and filed for his own DBA. Mrs. Kelley
denied making this remark. She did opine that she did not think Torres ever intended to
have a partnership. Torres stated that was the end of Coastal Container as far as he was
concerned. No EIN was ever obtained in the name of any partnership belonging to Kelley
and Torres.

 Material exhibits regarding the partnership issue provide little conclusive evidence. 
The general ledger was in the name of Danny R. Kelley. An accounting invoice, dated
March 4, 2000, was billed to "Danny R. Kelley, Coastal Container Company." A 1099 form
issued to Torres indicated the payor was Kelley individually, rather than any partnership.

The Texas Sales and Use Tax Permit was in the name of "Danny R. Kelley, Coastal
Container Company" at his Corpus Christi address. A subsequent application for EIN
shows the name of Danny R. Kelley, which was lined through with the name of Raul Torres
interlined. However, there is no signature on this application. 

 The written, unexecuted general partnership agreement stated in paragraph three:
"This Partnership shall commence on the execution of this Agreement and shall continue
until terminated by mutual agreement of the parties." Torres disagreed with that provision
of the agreement, among others. Kelley argues in his brief, "[T]he evidence shows that the
business was to become a partnership upon the signing of a written partnership agreement
by Kelley and Torres and when there was sufficient working capital placed into the
business." (Emphasis added). Kelley's testimony mirrors this argument: "It was going to
be a partnership when we signed . . . ." Though never executed, the instrument provided
that the written agreement "contains the sole agreement of the parties." 

 In terms of partnership property and revenue, a Coastal Container statement of
revenues and expenses, apparently prepared by Kelley's accountant in March 2000,
showed "Partners share of profits to be one half of $7.07." In contrast, the independent
expert found there to be profits of $11,274 according to Kelley's figures, and $26,898
according to Torres's figures. This left disputed or unverified amounts of $15,624. 

 A handwritten note on an inventory sheet indicated that the partnership had 266
barrels in September 1999. This figure is reiterated by another typed inventory sheet
showing the same number of barrels after September 1999. We note that Kelley argues
that partnership property is not property of the partners. See Tex. Rev. Civ. Stat. Ann. art.
6132b-5.01 (Vernon Supp. 2006) (a partner is not a co-owner of partnership property and
does not have an interest that can be transferred, either voluntarily or involuntarily, in
partnership property). 

 Before Kelley is entitled to recover for Torres's conduct, he is required to prove that
the parties entered into a verbal partnership, that Torres converted partnership property,
invoiced partnership customers for barrels sold under the name of a new company,
collected funds for those invoices, and breached a partnership duty of loyalty and good
faith. 

 There are numerous conclusory statements by the parties and witnesses about the
existence of a partnership. Such conclusory statements are no evidence of a partnership
agreement; that is, mere belief there may be a partnership is not probative evidence of a
partnership. Ben Fitzgerald Realty Co. v. Muller, 846 S.W.2d 110, 121 (Tex. App.-Tyler
1993, writ denied) (finding mere legal conclusions by a lay witness do not prove existence
of a partnership) (citing Murphy v. McDermott, Inc., 807 S.W.2d 606, 613 (Tex.
App.-Houston [14 th Dist.] 1991, writ denied)).

 Because the purported partnership events occurred after January 1, 1999, Kelley
contends this matter is governed by the Texas Revised Partnership Act. See Tex. Rev.
Civ. Stat. Ann. art. 6132b-2.02(a) (Vernon Supp. 2006). We agree. Applying the Texas
Revised Partnership Act, we analyze whether legal or factually sufficient evidence supports
the conclusion that there was a partnership. 

 The Act defines a partnership as an association of two or more persons to carry on
a business for profit as owners, whether the persons intend to create a partnership and
whether the association is called a partnership, joint venture, or other name. Id. According
to the Act, an agreement to share losses by the owners of a business is not necessary to
create a partnership. Id. at art. 6132b-2.03(c) (Vernon Supp. 2006). We may consider the
following factors indicating that a partnership or joint venture has been formed:

 (1) receipt or right to receive a share of the profits of the business;

 (2) expression of an intent to be partners in the business;

 (3) participation or right to participate in the control of the business;

 (4) sharing or agreeing to share:

 (A) losses of the business or

 (B) liability for claims by third parties against the business; and

 (5) contribution or agreeing to contribute money or property to the business.

 Id. at art. 6132b-2.03(a)(Vernon Supp. 2006); McDowell v. McDowell, 143 S.W.3d 124,
129 (Tex. App.-San Antonio 2004, pet. denied).

 Our review of the record demonstrates Torres did not act in an ownership or control
capacity, receive profits, or establish any other factors tending to show the existence of a
partnership with regard to Coastal Container Company. See McDowell, 143 S.W.3d at
129. Whatever rights to profits, if any, Torres was entitled to were disputed by Kelley and
his wife. While it is true that both parties and their attorneys made numerous statements
about a partnership to be formed, such conclusory statements are no evidence of the
formation of a partnership contract. Ben Fitzgerald Realty Co., 846 S.W.2d at 121. Mere
personal belief there may be a partnership is not probative evidence. Id. Kelley testified
there would be a partnership after the paperwork was signed. Mrs. Kelley was quoted as
saying there was only a DBA and Torres had "no authority." The DBA was in Kelley's
name. The bank account was solely in Kelley's name until weeks before the break up. 
The purported partnership itself had no bank account, no EIN, no DBA, no separate place
of business, no profits, and apparently no losses. The parties never agreed whether they
were to have a 50/50 or 51/49 split of profits. In effect, they never had a meeting of the
minds on their respective rights to, or receipt of, a share of profits. Both Kelley and his wife
expressed their understanding and intent that the partnership would be formed upon the
execution of a partnership agreement. The proposed partnership agreement was less than
two pages, a mere 16 paragraphs, representing the most rudimentary provisions of almost
any partnership. (3) Both the conduct and much of the testimony were inconsistent with the
formation of a partnership. Neither Torres nor Kelley testified to the statutory factors
forming the basis of a partnership, other than an intent that they would be partners. 

 While there may be more than a scintilla of evidence to indicate the parties may
have claimed a right to receive a share of profits, this circumstance by itself does not
indicate that a person is a partner in the business. See Tex. Rev. Civ. Stat. Ann. art. 
6132b-2.02(b)(1)(F) (receipt or right to receive profits as payment of consideration for sale
of business or other property does not indicate person is partner). Likewise, by statute, co-ownership of property in the form of joint tenancy, tenancy in common, or part ownership,
whether combined with sharing of profits, does not indicate that a person is a partner. Id.
at 6132b-2.02(b)(2).

 At the trial, Kelley tried to claim back salaries and back rents due to his corporation. 
The trial judge pointed out to Kelley that there was no agreement as to the terms of any
reimbursements. Kelley said Torres knew all about the workings of the business. Torres
disagreed. There was no agreement about capital contributions. There was no agreement
about sharing of losses or liabilities. The sales tax report was in the name of Kelley and
not a partnership. A 1099 form shows Danny Kelley, not a partnership, to be the payor to 
Torres. When Kelley went to the tax office, he testified he started the business as an
individual business. The business would become a partnership when the written
agreement was signed. That never happened according to Kelley.

 In Coleman v. Coleman, 170 S.W.3d 231 (Tex. App.-Dallas 2005, pet. filed), we are
given a description of winding up of a partnership. See id. at 236. Section 8.01 of the Act
provides that notice from a partner of a partnership-at-will constitutes an event requiring
a winding up, but also provides that a majority in interest may elect to continue the
Partnership. Tex. Rev. Civ. Stat. Ann. art. 6132b-8.01 (Vernon Supp. 2006). The rules
for distribution upon a winding up require that assets first be applied to debts and next to
"settle partnership accounts among the partners." Id. Section 8.06(b) governs settlement
procedures and provides, among other things, that "the profits and losses that result from
the liquidation of the partnership property must be credited and charged to the partners'
capital accounts." Id. 

 Notably, neither Torres nor Kelley, or his accountant, followed the procedures for
winding up a partnership. Rather, both Torres and Kelley resorted to self help. Torres took
the barrels, worth $400 or $500, and Kelley kept the bank account. 

 Based on the foregoing, we conclude that the evidence is legally insufficient to
support the factors indicating the creation of a partnership. See Tex. Rev. Civ. Stat. Ann.
art. 6132b-2.02(a)(Vernon Supp. 2006); City of Keller, 168 S.W.3d at 822. We conclude
that the findings that Kelley was entitled to any recovery by virtue of a partnership he and
his wife variously denied establishing, is so against the great weight and preponderance
of the evidence as to be manifestly unjust or clearly erroneous. Pool, 715 S.W.2d at 635.

 The judgment of the trial court is affirmed in all particulars except that portion
allowing any recovery to Kelley. The portion of the judgment allowing recovery to Kelley
is reversed and rendered.



 DON WITTIG,

 Justice





Memorandum opinion delivered and filed 

this the 22nd day of February, 2007. 
1. Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice
of the Supreme Court of Texas pursuant to the government code. Tex. Gov't Code Ann. § 74.003 ( Vernon
2005).
2. The name on the account opened and controlled by Kelley was Coastal Container Company.
3. Perhaps Mrs. Kelley was correct that Torres never intended there to be a partnership.